MURRAY LEVINE, PROSECUTOR-APPELLANT, v. THE STATE OF NEW JERSEY AND CHARLES M. EGAN, JUDGE OF THE HUDSON COUNTY COURT OF COMMON PLEAS, RESPONDENTS.

ROBERT BARBALET, PROSECUTOR-APPELLANT, v. THE STATE OF NEW JERSEY AND CHARLES M. EGAN, JUDGE OF THE HUDSON COUNTY COURT OF COMMON PLEAS, RESPONDENTS.

Argued February 7, 1933—Decided April 27, 1933.

For the prosecutors-appellants, *Raskin & Hornstein* (*Isidore Hornstein*, of counsel).

For the respondents, *James A. Hamill* (*Frank J. Reardon*, of counsel).

The opinion of the court was delivered by

HEHER, J. The appellant in each of these cases appeals from the judgment of the Supreme Court, sustaining his conviction in the First Criminal Court of Jersey City upon a complaint charging that he was, on January 24th, 1931, a disorderly person within the intent and meaning of section 1 of an act entitled "An act concerning disorderly persons (Revision of 1898)," in that he was "a common burglar loitering in and upon" a designated street in Jersey City. While each was charged singly with the offense in question, they were jointly identified with the conduct that led to their apprehension, and were tried together. The complaints and convictions are identical in form and substance, and appellants assign the same reasons for reversal. The applicable clause of the statute (2 *Comp. Stat., p* 1926) provides that "all runaway servants or apprentices, and all vagrants or vagabonds, common drunkards, common thieves, burglars or pickpockets, common night-walkers, and common prostitutes, shall be deemed and adjudged to be disorderly persons." Section 36 provides that it shall be the duty of every constable or other police officer, and lawful for any other person to apprehend, without warrant or process, any disorderly person,

and to take him before any magistrate of the county where apprehended.

Appellants challenge the constitutionality of the clause upon which the complaints were based. They insist that it contravenes the provisions of paragraph 1 of article 1 of the Constitution of New Jersey, and section 1 of the fourteenth amendment to the federal constitution, in that it deprives those coming within its provisions of their liberty without due process of law, and denies to them the equal protection of the laws.

The legislative purpose evidently was to place in the same category thieves, burglars and pickpockets, and to classify as disorderly persons habitual offenders of the character designated. This was a proper legislative function. The power thus exercised is an attribute of sovereignty. At common law a wrong which public policy requires to be prosecuted by the state is an indictable offense. 1 *Whart. Cr. L.* (*12th ed.*) § 15. The police of a state, in a comprehensive sense, embraces its whole system of internal regulation, by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others. 2 *Cooley Const. Lim.* (*8th ed.*) 1223. Blackstone defines the public police and economy as "the due regulation and domestic order of the kingdom, whereby the inhabitants of a state, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood, and good manners, and to be decent, industrious and inoffensive in their respective stations." 4 *Bl. Com.* 162. Jeremy Bentham, in his General View of Public Offenses, has this definition: "Police is in general a system of precaution, either for the prevention of crimes or of calamities."

The states, as a part of their police power, have a large measure of discretion in creating and defining criminal of-

fenses. *Shevlin-Carpenter Co.* v. *Minnesota,* 218 *U. S.* 57; 30 *Sup. Ct.* 663; 54 *L. Ed.* 930; *Powell* v. *Pennsylvania,* 127 *U. S.* 678; 8 *Sup. Ct.* 992; 32 *L. Ed.* 253; *Mugler* v. *Kansas,* 123 *U. S.* 623; 8 *Sup. Ct.* 273; 31 *L. Ed.* 206. "Due process" requires, *inter alia,* a law creating and defining the offense and an accusation in due form. *Stewart* v. *Michigan,* 232 *U. S.* 665; 34 *Sup. Ct.* 476; 58 *L. Ed.* 786; *Frank* v. *Mangum,* 237 *U. S.* 309; 35 *Sup. Ct.* 582; 59 *L. Ed.* 969. A statute of this character does not constitute a denial of the equal protection of the laws, where it operates without discrimination on all persons and classes of persons who are similarly situated. *United States* v. *Heinze,* 218 *U. S.* 532; 31 *Sup. Ct.* 98; 54 *L. Ed.* 1139; *Howard* v. *Kentucky,* 200 *U. S.* 164; 26 *Sup. Ct.* 189; 50 *L. Ed.* 421; *Shevlin-Carpenter Co.* v. *Minnesota, supra.*

The manifest purpose of this legislation is to check evil in its beginning and thus to insure the public safety. The statute is not arbitrary or unreasonable. It provides for the apprehension and punishment of a class that menaces the security of persons and property. The word "common" when so employed has a technical meaning, well understood in the law. It imports frequency. *Commonwealth* v. *McNamee,* 112 *Mass.* 285; *State* v. *Russell,* 14 *R. I.* 506. It has been defined as frequent, usual, customary, and habitual. *State* v. *O'Connor,* 49 *Me.* 594; *Commonwealth* v. *Foley,* 99 *Mass.* 497. Webster defines the term thus: "Habitual, professed, or confessed—used indefinitely in various terms implying illegal or criminal conduct; as a common scold, common thief, common nuisance, &c." The common law made indictable common scolds, common brawlers, common barrators, common drunkards, night-walkers, and persons habitually and openly lewd. 2 *Whart. Cr. L.* (*12th ed.*) § 1715 *et seq.* Such offenses are a species of nuisance. It is the undoubted function of the state to apprehend those who would violate laws ordained to protect the person and property of citizens, and who are seeking the opportunity to do so. Such persons are determined and ever active foes of society. They are potential actors in crimes of the first magnitude. To challenge the

power of the state to prevent the commission of such crimes by legislation of this character, is to challenge its power to denounce and punish the crime itself.

A "common burglar," therefore, is one who by practice and habit is a burglar, and it is clearly within the power of the legislature to classify such as disorderly persons. Of course, to justify a conviction in a case of this character, the proofs must establish that status at the time of the defendant's apprehension.

The next ground urged by appellants is that there was no valid complaint, in that a particular offense was not therein specified. It is argued that the allegation that the named defendant was a "common burglar" is a conclusion of the pleader and that it is necessary to set forth facts and circumstances from which it can be inferred that defendant had this status.

At common law the indictment of a common scold was sufficient if it simply averred her to be such. 2 *Whart. Cr. L.* (12*th* ed.) 1715. The words by which the offense is created and defined are fully descriptive of it, and are therefore technical; and, because they are so, the offense may be charged in the general words of the statute. *Commonwealth* v. *Boon,* 68 *Mass.* 74. In *State* v. *Russell, supra,* it was held that the words "common night-walker" have a technical meaning in law, and in a complaint charging such offense it is not necessary to allege particular acts, inasmuch as the offense does not consist of particular acts, but of a habitual practice evidenced by a series of acts. Where the words of the statute are descriptive of the offense, it is ordinarily sufficient to charge the offense in the language of the statute, or in words of similar import. 16 *C. J.* 1224. This contention is therefore without substance.

Appellants' next contention is that there was no testimony to support the convictions. We find that there was. We deem it unnecessary to discuss the evidence in detail. Suffice it to say that Levine was thrice convicted of burglary in New York. Barbalet was twice convicted of burglary in that state and of receiving stolen goods in this state. Their conduct on the

street aroused the suspicions of the police officers. They loitered, peering through store windows and apparently making observations of buildings in the neighborhood. When interrogated by the officers they were evasive in their answers; one gave a false name; the other gave a false address, and they gave what were subsequently found to be untrue explanations of the reasons for their visit to Jersey City. They could not satisfactorily explain their presence at the point where their actions attracted the attention of the police officers, and resulted in their apprehension. Barbalet was well acquainted with the locality, but it was Levine's first visit to Jersey City. The latter accompanied Barbalet merely as a friend and companion. It is a very significant circumstance that these men, found together under conditions that aroused the suspicions of the police officers, had been several times convicted of the same species of crime, one that is ordinarily perpetrated by two or more acting in concert. Their actions were indicative of an unlawful purpose, and were suggestive of the pursuit of the career of crime that concededly they had deliberately chosen some time before. It is not the function of this court to weigh the evidence. The convictions rest upon a basis of rational inference, tantamount to legal proof of the fact, and are therefore supported by the evidence. *Manziano* v. *Public Service Gas Co.*, 92 *N. J. L.* 322, 327; *Rothmen* v. *State*, 102 *Id.* 43.

None of the remaining grounds urged by appellants requires discussion. They are entirely without merit.

The judgment in each case will therefore be affirmed.

*For affirmance*—THE CHANCELLOR, PARKER, LLOYD, CASE, BODINE, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 11.

*For reversal*—None.