## BEAIL v. DISTRICT OF COLUMBIA.

### No. 1081.

Municipal Court of Appeals for the District of Columbia.

Argued July 16, 1951.

Decided August 6, 1951.

---

2. Cf. Boland v. Southern Ice Co., D.C.E. D.S.C.; 80 F.Supp. 924.

Albert A. Stern, Washington, D. C., Charles A. Schaeffer, Washington, D. C., on the brief, for appellant.

Edward A. Beard, Asst. Corporation Counsel, Washington, D. C., Vernon E. West, Corp. Counsel, and Chester H. Gray, Principal Asst. Corp. Counsel, Washington, D. C., on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Appellant was charged and convicted of being a vagrant, to wit, "a person who wanders about the streets at late and unusual hours of the night without any visible and lawful business and not giving a good account of herself." [1]

The arresting officer testified to about twenty occasions between February 22 and March 13 when he saw appellant standing or loitering on the streets at night. Many of these occasions were as late as 1:00 and 2:00 o'clock in the morning. On some occasions she was standing in front of restaurants or lunchrooms. On some occasions she was alone; on other occasions she was talking with men; and on several occasions she was with one Doris Richardson, a known and convicted prostitute. On

---

1. "The following classes of persons shall be deemed vagrants in the District of Columbia: * * *

"(8) Any person who wanders about the streets at late or unusual hours of the night without any visible or lawful business and not giving a good account of himself." Code 1940, Supp. VII, 22–3302.

various occasions the officer asked why she was on the streets at such hours. Once she replied she was on her way home and once that she was "just out." On one occasion the officer asked her "how business was" and she in turn asked if he had $10 to spend. Another time when he asked why she was on the street she replied that she was doing nothing wrong and when he then asked how business was she stated that no one had any money. On still another occasion when he asked why she was on the street at 1:50 a. m., she said he should not ask that and she then laughed. On the night of the arrest at about 12:05 a. m., the officer saw her and asked why she was on the street. She replied that her husband was drunk in a lunchroom and that she was going home, and upon inquiry she said she "had left Doris down at Monty's place." The arrest was then made.

Appellant testified that she knew the officer was a policeman and had seen him many times but had no reason to fear him because she was committing no crime, and that she recalled talking to him only on three occasions, including the time of arrest. She further testified she was married and lived with her husband from whom she received over $200 a month. As far as the record shows, she gave no explanation for being on the streets at late hours. Her record of having been convicted four times for soliciting prostitution and once for pandering was admitted to be accurate.

■ Appellant's first point seems to be that she could not be guilty of vagrancy because she was a person of a fixed abode, having lawful means of support. This point might have merit if appellant had been charged with the common-law offense of vagrancy, but in this and most other jurisdictions vagrancy is defined by statute. In some of the classifications or definitions under our statute, the absence of lawful means of support[2] or the absence of a fixed and regular abode,[3] is material, but the eighth classification, under which appellant was charged, makes no reference to either of these features.

■ Appellant also argues that she was entitled to an acquittal because the arresting officer stated that at no time did he see appellant commit any specific offense. This argument overlooks the nature of vagrancy statutes. They are designed to prevent crime and if the officer must wait until a crime is committed, the preventive purposes of the statute wholly fail.[4]

■ It is also contended that it was error to permit testimony concerning appellant's association on the streets with a known prostitute and that she conversed with unidentified men, the argument being made that in effect this testimony tended to prove appellant guilty of solicitation for prostitution, an offense with which she was not charged. However we think that proof of appellant's wandering on the streets without visible and lawful business necessarily required evidence of what she was doing and with whom she was associating.

■ Probably all of appellant's arguments are summed up in her claim that she has a constitutional right to go freely on the streets without having to give an account of her actions to some inquisitive police officer. We may concede the validity of this broad general statement. Every citizen has the right to go freely on the streets at any hour of the day or night, provided he is there for a legitimate purpose. Such purpose may be any legitimate business or pleasure. Without visible and

---

**2.** The third classification in the statute is: "Any person leading an immoral or profligate life who has no lawful employment and who has no lawful means of support realized from a lawful occupation or source."

**3.** The sixth classification in the statute is: "Any person wandering abroad and lodging in any grocery or provision establishment, vacant house, or other vacant building, outhouse, market place, shed, barn, garage, gasoline station, parking lot, or in the open air, and not giving a good account of himself."

**4.** Clark v. District of Columbia, D.C.Mun. App., 34 A.2d 711. "A vagrant is a probable criminal; and the purpose of the statute is to prevent crimes which may likely flow from his mode of life." District of Columbia v. Hunt, 82 U.S.App. D.C. 159, 161, 163 F.2d 833, 835, affirming D.C.Mun.App., 47 A.2d 783.

768

lawful business, as used in this classification, does not refer to the ordinary vocation of the person but has reference to the purpose of being on the street, and business is not to be limited to the pursuit of monetary gain. One may have lawful business on the street even though he is there merely for exercise or recreation or any other proper purpose. Our statute is not to be construed as a curfew law, forbidding persons to be on the streets after a certain hour of the night. Officers of the law have no right to compel one to account for his actions merely because that person is on the streets at an unusal hour.

■ However, when one's wandering and conduct on the streets at late or unusual hours is such as to give reasonable grounds for belief that his purpose in being on the street is not a legitimate one, we think the law may validly require that he be called upon to account for his actions and deem his failure to give a good account as proof that his purpose on the street is not a legitimate one.

■ Where, as here, a woman is seen wandering around the streets time after time in the early morning hours, often alone but sometimes in company of a prostitute, engaging in conversations with men, with no indication that this course of conduct has any legitimate purpose, we think the trial court had a substantial basis for finding that the officer had reasonable grounds for believing that her use of the streets was not for any legitimate purpose and for asking that she account for her actions, and in further finding that she gave neither the officer nor the court a good account of herself.[5]

Affirmed.

5. For cases in other jurisdictions involving somewhat similar statutes, see Ex parte McLaughlin, 16 Cal.App. 270, 116 P. 684; Ex parte Cutler, 1 Cal.App.2d 273, 36 P.2d 441; McNeilly v. State, 119 N.J.L. 237, 195 A. 725; City of Portland v. Goodwin, 187 Or. 409, 210 P.2d 577; State v. Grenz, 26 Wash.2d 764, 175 P.2d 633, appeal dismissed, 332 U.S. 748, 68 S.Ct. 54, 92 L.Ed. 336.