In Re the Applications of PAUL R. LAIOLO and ROBERT J. SULLIVAN for Writs of Habeas Corpus.

Nos. 5209, 5210

April 18, 1967                           426 P.2d 726

*Stewart and Horton,* of Reno, for Petitioner Laiolo.

*Vargas, Dillon, Bartlett and Dixon,* and *Albert F. Pagni,* of Reno, for Petitioner Sullivan.

*Richard Breitweiser,* City Attorney, *Samuel T. Bull,* Assistant City Attorney, *Samuel B. Francovich* and *G. W. Belcher,* Special Assistant City Attorneys, for Respondent.

**OPINION**

By the Court, THOMPSON, C. J.:

These are consolidated original proceedings for writs of habeas corpus. Each petitioner is a President of a State Bank, and each challenges the legality of his arrest and restraint for the failure of his bank to pay a Reno City business license fee. In each instance the challenge rests mainly upon the ground that the ordinance as written is unconstitutional as applied to banks since its language is so vague and indefinite as to violate due process.[1] Habeas is an appropriate remedy to resolve this question. NRS 34.500(4) [authorizing discharge from restraint when the process, though proper in form, has been issued in a case not allowed by law]; In re Philipie, 82 Nev. 215, 414 P.2d 949 (1966) [holding that the constitutionality of a city ordinance may be raised by habeas].

The relevant facts are undisputed. Sullivan is the President of the Valley Bank of Nevada, and Laiolo is President of the Pioneer Citizens Bank of Nevada. Each bank was organized under the laws of Nevada, has its principal place of business in the City of Reno, and each is a "state member bank" under the Federal Reserve Act subject to control of Federal law and the rules and regulations of the Board of Governors of the Federal Reserve System. As a member of the Federal Reserve System, each bank also does business under the Federal Deposit Insurance Corporation Act.

The business license section of the Reno Municipal Code, 4.01.360, regarding banks, reads: "Every person engaged in the banking business, except banks doing business under the laws of the United States, shall pay for and obtain a license to carry on such business according to the following schedule: (1) Those having a capitalization of less than $500,000.00

---

[1]Other points were pressed but need not be considered.

shall pay for such license the sum of $240.00 per year; (2) Those having a capitalization of $500,000.00 or over, and not exceeding $1,000,000.00, shall pay for such license the sum of $360.00 per year; (3) Those whose capitalization exceeds $1,000,000.00 shall pay for such license the sum of $480.00 per year."

It is, of course, unlawful to carry on any business (unless exempt) without a license. Reno, Nev. Municipal Code 4.01.020. The violator is subject to a fine of not less than $1 nor more than $500, to imprisonment of not more than 6 months, or to both fine and imprisonment. Each day's violation is a separate offense. Reno, Nev. Municipal Code 1.12.010. Since the ordinance carries serious sanctions for disobedience, its terms must be sufficiently explicit to inform those who are subject to it what conduct will render them liable to its penalties. Connally v. General Construction Co., 269 U.S. 385 (1926). The requirement of clarity is sometimes held to apply with special force to a licensing ordinance. Williams v. City of Richmond, 14 S.E.2d 287 (Va. 1941). When governmental intention is in doubt the ordinance must be strictly construed and the doubt resolved in favor of the party charged with violation. Smith v. District Court, 75 Nev. 526, 347 P.2d 526 (1959); Ex parte Todd, 46 Nev. 214, 210 P. 131 (1922); Ex parte Smith, 33 Nev. 466, 111 P. 930 (1910). With these standards in mind we turn to examine the provision under attack.

The petitioners each contend that the ordinance as applied to banks is constitutionally infirm for uncertainty. They press the notion that one reading the phrase "except banks doing business under the laws of the United States," cannot ascertain whether those words embrace only national banks chartered under federal law, or whether they also include state banks which have elected to become members of the Federal Reserve System and, to that extent, are doing business under the laws of the United States. Furthermore, they point out that the standard for determining the amount of the license fee to be paid is vague and uncertain, since the ordinance does not define "capitalization."

We are unable to refute the validity of the petitioners' arguments by resort to any established rules of construction. It seems to us that the words of exception are susceptible to either of the two interpretations suggested. The same difficulty inheres in the term "capitalization." Does it mean "authorized

capitalization," (cf. NRS 659.070(2)), or the "declared and nominal capital, surplus and undivided profits," cf. David v. Guaranty Bank and Trust Co., 102 So. 505 (La. 1925), or "paid up capital" (NRS. 661.020)?

The words of Connally v. General Construction Co., supra, at 391 are apropos: "And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."[2] In our judgment 4.01.360 of the Reno Municipal Code is unconstitutionally vague.[3] Therefore, each petition for habeas corpus is granted.

COLLINS and ZENOFF, JJ., concur.

---

[2]See "Void for Vagueness Doctrine in the Supreme Court," 109 U.Pa.L.Rev. 67 (1960); and, "Due Process Requirements of Definiteness in Statutes," 62 Harv.L.Rev. 77 (1948).

[3]It is apparent that the intended scope of the exception, as well as the meaning of the term "capitalization," may each easily be clarified by appropriate amendment.