CITY OF RENO, PETITIONER, v. SECOND JUDICIAL DISTRICT COURT, AND JOSEPH JAMES BARRETT AND JOHN GEORGE BULLIS, RESPONDENTS.

No. 5225

May 3, 1967                                    427 P.2d 4

*Clinton E. Wooster,* of Reno, for Petitioner.

*Samuel B. Francovich,* of Reno, for Respondents.

*C. G. Griswold* and *Jerry Carr Whitehead,* of Reno, for Nevada Trial Lawyers and Nevada Civil Liberties Union, amicus curiae.

## OPINION

By the Court, THOMPSON, C. J.:

The Reno, Nev., Municipal Code, 12–112–1, creates a crime called "disorderly conduct" for which one may be punished by a fine not to exceed $500, by imprisonment not to exceed 6 months, or by both. The part of the ordinance with which this proceeding is concerned prohibits persons of evil reputation from consorting for an unlawful purpose. A person of evil reputation is defined as one who has been convicted of any felony, misdemeanor or gross misdemeanor involving moral turpitude, or has the general reputation in the community as a prostitute, panderer, narcotics user, burglar or thief. Proof that the accused bears an evil reputation and is found consorting with any person of evil reputation is prima facie evidence "that such consorting was for an unlawful purpose."

The district court declared the ordinance unconstitutional. The City has brought this proceeding in certiorari to review that ruling. The proceeding is authorized. NRS 34.020(3).[1]

---

[1]NRS 34.020(3) provides: "In any case prosecuted for the violation of a statute or municipal ordinance wherein an appeal has been taken from a justice's court or from a municipal court, and wherein the

The ordinance is reproduced in the footnote.[2] Its constitutionality is challenged on the premise that it fails to satisfy the demands of due process. The main contention is that due process is denied since the effect of the law is to make status a crime (as distinguished from conduct or attempted action). We are referred to Robinson v. California, 370 U.S. 660 (1962) [holding unconstitutional a statute which imposed criminal penalties for the condition of being addicted to the use of narcotics]; Edwards v. California, 314 U.S. 160 (1941) [where, in a concurring opinion, Justice Jackson wrote: "Does 'indigence' as defined by the application of the California statute constitute a basis for restricting the freedom of a citizen, as crime or contagion warrant its restriction? We should say now, and in no uncertain terms, that a man's mere property status, without more, cannot be used by a state to test, qualify, or limit his rights as a citizen of the United States. 'Indigence' in itself is neither a source of rights or a basis for denying them. The mere state of being without funds is a neutral fact—constitutionally an irrelevance, like race, creed, or color."]; Hicks v. District of Columbia, 383 U.S. 252 (1966) [where Justice Douglas, dissenting from the dismissal of certiorari as improvidently granted, expressed his

district court has passed upon the constitutionality or validity of such statute or ordinance, the writ shall be granted by the supreme court upon application of the state or municipality or defendant, for the purpose of reviewing the constitutionality or validity of such statute or ordinance, but in no case shall the defendant be tried again for the same offense."

[2]"A. *Definition.*
"Evil reputation as used in this Ordinance shall be defined as follows:
"a. Conviction of any felony; or
"b. Conviction of any misdemeanor or gross misdemeanor involving moral turpitude; or
"c. Having a general reputation in the community as a prostitute, panderer, narcotics user, burglar or thief.
"B. *Disorderly Conduct.*
"Any person who is engaged in any illegal occupation or who bears an evil reputation, who is found consorting for an unlawful purpose with a person or persons who bear an evil reputation, thieves or criminals, shall be guilty of the offense of disorderly conduct and upon conviction thereof shall be confined in the County Jail for a period not to exceed six (6) months or fined not more than Five Hundred Dollars ($500.00), or both such fine and imprisonment.
"C. *Prima Facie Evidence.*
"In any prosecution under this Ordinance, proof that the defendant is engaged in an illegal occupation or bears an evil reputation and is found consorting with any person or persons of an evil reputation, thieves or criminals, shall be prima facie evidence that such consorting was for an unlawful purpose."

view that the personal condition of being a vagrant cannot constitutionally be made a crime]; Sherry, Vagrants, Rogues and Vagabonds—Old Concepts in Need of Revision, 48 Calif.L.Rev. 557 (1960) [espousing the theme that the crime of status should be held to deny due process of law]; 37 N.Y.U.L.Rev. 102 (1962); Foote, Vagrancy-Type Law and Its Administration, 104 U.Pa.L.Rev. 603 (1956).

It is suggested that the rationale expressed in the cited authorities should control the resolution of the enactment before us since its effect is to make criminal the mere state of being an ex-convict, or of having an "evil reputation."

Subordinately, the disorderly conduct ordinance is attacked on the ground that its language is so vague and indefinite as to violate due process. It is submitted that the terms "evil reputation," "general reputation," "consorting," "moral turpitude," "unlawful purpose," are unclear and uncertain for a valid penal law. In this regard the following authorities are offered. Lanzetta v. New Jersey, 306 U.S. 451 (1939) [holding New Jersey's "gangster" act unconstitutional on the ground of vagueness]; Connally v. General Construction Co., 269 U.S. 385 (1926) [where, inter alia, the court wrote: "And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."]; Edelman v. California, 344 U.S. 357, 362 (1953) Black, dissenting [where the term "dissolute person" was, by Justice Black, found too vague and uncertain]; Musser v. Utah, 333 U.S. 95 (1948) [where the court hinted that the phrase "injurious to public morals" might attempt to cover so much that it effectively covers nothing]; People v. Belcastro, 190 N.E. 301 (Ill. 1934) [where the Illinois Vagabond Act was struck down]; cf. In re Laiolo, 83 Nev. 186, 426 P.2d 726 (1967).

Finally, a constitutional challenge is aimed at sub-section (c) of the ordinance which allows proof that the defendant bears an evil reputation and is found consorting with any person of evil reputation to be prima facie evidence that "such consorting was for an unlwful purpose." It is argued that proof of the mere association of persons of evil reputation bears no rational connection to the fact presumed—that the association was for an unlawful purpose—and must be struck down on the authority of Tot v. United States, 319 U.S. 463 (1943); United States v. Romano, 382 U.S. 136 (1965); Carter v. State, 82 Nev. 246, 415 P.2d 325 (1966); People v. Licavoli, 250 N.W. 520 (Mich. 1933); Ex parte Smith, 36

S.W. 628 (Mo. 1896). It is suggested that the association of such persons does not necessarily point to an unlawful purpose; that the sub-paragraph is wholly incompatible with the presumption of innocence, and with the burden cast upon the state to prove guilt beyond a reasonable doubt. Contra: State v. Salerno, 142 A.2d 636 (N.J. 1958); People v. Pieri, 199 N.E. 495 (N.Y.Ct.App. 1936).

The district court relied upon each of the mentioned constitutional standards in striking down the ordinance.

The traditional concept of a crime contemplates action or the failure to act. Indeed, our legislature defines a crime as "an act or ommission forbidden by law." NRS 193.120. An attempt to commit a crime likewise requires the doing of an act accompanied by the requisite intent. NRS 208.070. These basic constituents of a crime were ignored by the framers of the disorderly conduct ordinance, since that offense is defined in terms of being rather than in terms of acting. Punishment is prescribed for one's status, or personal condition. The enactment does not demand the doing of an act or the presence of criminal intent in order to punish for disobedience. These requisites are sought to be supplied by inference from the mere fact that the defendant has an evil reputation and is found consorting with another who bears the same burden. To punish for reputation offends one's sense of fundamental fairness and does not square with the constitutional safeguards of life, liberty and property. State v. Kartz, 13 R.I. 528 (1882).

The justification for such proscription must be found, if at all, within the police power of a municipality to legislate for the public welfare and safety. The cases of People v. Pieri, 199 N.E. 495 (N.Y.Ct.App. 1936) and State v. Salerno, 142 A.2d 636 (N.J. 1958) may be read to support this view, though in Salerno the court did not undertake to resolve the constitutional challenge. In any event, it is apparent that the exercise of governmental power in this fashion confronts the revered doctrine that one may not be deprived of his liberty or property without due process of law. One force must yield to the other. Our role is to decide which has the greater stature in the matter at hand.

The aim of the ordinance is to prevent crime. Armed with the authority which it bestows, an officer may harass a reputed criminal, and, perhaps, force him to leave town. He may arrest and jail on mere suspicion. He may round up individuals for interrogation, and otherwise use its protections in any

manner which his fancy may suggest. It is questionable whether this so-called tool of crime prevention is effective. Commentators have reported that it is not. The casual relation between the assumption of a proscribed status and the propensity for future criminal conduct has not been demonstrated. Foote, Vagrancy-Type Law and Its Administration, 104 U.Pa.L.Rev. 603, 625–627 (1956); Lacey, Vagrancy and Other Crimes of Personal Condition, 66 Harv.L.Rev. 1203, 1226 (1953); Note, Vagrancy Concept Reconsidered: Problems and Abuses of Status Criminality, 37 N.Y.U.L.Rev. 102, 134 (1962).

This type of law is not needed to grant an officer the right to stop persons and make some inquiries incident to a legitimate investigation. A citizen's freedom may be temporarily interrupted for that purpose. People v. Mickelson, 380 P.2d 658 (Cal. 1963); cf. People v. Rivera, 201 N.E.2d 32 (N.Y.Ct.App. 1964) dealing with the New York "stop and frisk" statute. The vice of the ordinance before us is that it allows the forceful detention of persons belonging to the class described without any showing of probable cause—not a mere temporary interruption to answer questions. One possessing an evil reputation may be arrested, booked, arraigned, put to the expense of bail and counsel, or, if indigent, he must languish in jail awaiting trial—all because of the officer's subjective, on the spot evaluation, aided, of course, by the presumption that the defendant had some unlawful purpose in mind. In our judgment the interests of a free society are not promoted by such an ordinance. We share the view of the district court that the ordinance is unconstitutional on its face since its effect is to make status a crime thereby violating due process. This proceeding is dismissed and the judgment below is affirmed.

Zenoff, J., concurs.

Collins, J., dissenting:

Our duty is clear that we must uphold the constitutionality of a statute (or ordinance of the City of Reno in this case) if we can. To put it another way, if there is any doubt upon the constitutionality of a law it ought to be sustained. State v. McClear, 11 Nev. 39, 68 (1876). All statutes (and ordinances) come to this court clothed with a presumption of constitutionality. We should not declare them unconstitutional unless we have no choice. Here we have another choice.

A comparable ordinance was constitutionally upheld in People v. Pieri, 199 N.E. 495 (N.Y. 1936). A similar ordinance was discussed by the Supreme Court of New Jersey in State v. Salerno, 142 A.2d 636 (N.J. 1958), which refused to pass upon the constitutionality of the ordinance but reversed the conviction on other grounds.

The New York ordinance, discussed in *Pieri,* supra, reads in part:

"Section 722: Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct: * * *

"Who bears an evil reputation and with an unlawful purpose consorts with thieves and criminals * * * consorting with persons of like evil reputation, thieves or criminals shall be prima facie evidence that such consorting was for an unlawful purpose."

Interpreting the elements of the crime necessary to be proved to sustain a conviction, the court said in *Pieri,* supra, at page 497:

"Here then is the crime. If a person of bad reputation, with intent to provoke a breach of the peace, keeps company with criminals, makes them his associates, for an unlawful purpose, he is guilty of disorderly conduct. *Nothing unconstitutional about such a statute.* [Emphasis supplied.] There may be difficulty in finding the evidence or in proving the case, but when proved, an offense is committed not unlike 'vagrancy,' which has been in the statute books for many a day."

That is the touchstone of Reno's problem. One can envision great difficulty in securing evidence and in getting it admitted at the trial, but we should let Reno try and not strike down the ordinance before *any* experience is had with it. This court, the district court and the Reno municipal court would still have the obligation to require the city attorney to comply with constitutional requirements of due process in its enforcement.

The Reno City Council, in its wisdom, saw fit to adopt the measure in an effort to combat crime attributable to persons of "evil reputation." Thus, when a municipality such as Reno undertakes to experiment with programs and techniques to deal with the problem, we should not prevent that undertaking unless it is our clear, legal and constitutional duty to do so.

The United States Supreme Court has not seen fit yet to hold unconstitutional vagrancy statutes, including the "status" question presented here. Hicks v. District of Columbia, 383

U.S. 252 (1966). Hence, in the absence of any decisive mandate from that court, we should hold unconstitutional only those ordinances and statutes where we have no choice.

We must be extremely careful that our dedication to pure constitutional principal does not destroy the very thing we are trying to protect. Society has to adjust to the rules of the game being played, and if that game is ruthless, brutal crime, society has to have ingenious, but lawful techniques to deal with it.

I respectfully dissent.