FRANK PARKER, Petitioner, v. MUNICIPAL JUDGE OF THE CITY OF LAS VEGAS, Respondent.

No. 5213

HENRY DENNIS STAMPS, Petitioner, v. MUNICIPAL JUDGE OF THE CITY OF LAS VEGAS, Respondent.

No. 5261

May 15, 1967                                    427 P.2d 642

*Charles L. Kellar,* of Las Vegas, for Petitioners Frank Parker and Henry Dennis Stamps.

*Sidney R. Whitmore,* City Attorney, Las Vegas, and *James M. Bartley,* Assistant City Attorney, for Respondent.

## OPINION

By the Court, THOMPSON, C. J.:

These are consolidated proceedings in prohibition to test the constitutionality of the "disorderly persons" ordinance of the City of Las Vegas. Each petitioner was charged with being a "disorderly person" in that he had the physical ability to work, no visible means of support, and was in a public place.[1] Each was tried before the Municipal Court and found guilty. Neither has been sentenced because these proceedings intervened. The Municipal Court is not a court of record. Therefore, we must assume that the charges were proven true, i.e., that each petitioner, at the time specified, had the ability to work, was without visible means of support, and was found in a public place. Thus, our concern is whether that part of the ordinance under which they were charged is unconstitutional on its face. It is our judgment that it is unconstitutional since its effect is to make the status of poverty a crime

[1]Title VI, Ch. 1, § 11, Las Vegas City Code. Disorderly Persons: Persons within the Limits of the City who have the physical ability to work, not having visible means of support, living idly, or who are found loitering or loafing about the streets, alleys or public places of the City, or who are found loafing or loitering habitually in or about the dramshops, tippling houses, saloons, barrooms, roadhouses, night clubs, gambling houses or places resorted to by persons for purposes of prostitution or immoral purposes, shall be deemed disorderly persons and shall be guilty of a misdemeanor.

thereby violating due process. City of Reno v. District Court, 83 Nev. 201, 427 P.2d 4 (1967) [where we held unconstitutional a municipal ordinance prohibiting persons of evil reputation from consorting for an unlawful purpose]; Robinson v. California, 370 U.S. 660 (1962) [holding unconstitutional a statute which imposed criminal penalties for the condition of being addicted to the use of narcotics]; Hicks v. District of Columbia, 383 U.S. 252 (1966) [where Justice Douglas, dissenting from the dismissal of certiorari as improvidently granted, expressed his view that the personal condition of being a vagrant cannot constitutionally be made a crime].

We approve, without qualification, the comment of Justice Jackson in his concurring opinion in Edwards v. California, 314 U.S. 160, 184, 185 (1941): "We should say now, and in no uncertain terms, that a man's mere property status, without more, cannot be used by a State to test, qualify, or limit his rights as a citizen of the United States. 'Indigence' in itself is neither a source of rights or a basis for denying them. The mere state of being without funds is a neutral fact —constitutionally an irrelevance, like race, creed, or color." Writers upon the subject condemn this type of ordinance as inimical to our fundamental notions of freedom, and hostile to the idea that every person has value. Foote, Vagrancy-Type Law and Its Administration, 104 U.Pa.L.Rev. 603 (1956); Sherry, Vagrants, Rogues and Vagabonds—Old Concepts in Need of Revision, 48 Cal.L.Rev. 557 (1960); Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L.J. 1 (1960); Comment, 37 N.Y.U.L.Rev. 102 (1962). We likewise condemn it.

Our reasons for voiding a law which makes status, rather than conduct, a crime are fully articulated in City of Reno v. District Court, supra, and need not again be expressed. We do, however, add one further comment. The ordinance before us, unlike that involved in the City of Reno v. District Court case, does not attempt to interject, by way of presumption, an "unlawful purpose," to justify its validity. Of course, in our view, such addition would not save the ordinance from constitutional challenge. We note this distinction only to point out that this ordinance cannot meet constitutional standards under any analysis. It simply is not a crime to be unemployed, without funds, and in a public place. To punish the unfortunate for this circumstance debases society. The comment of Justice Douglas is relevant: "How can we hold our heads high and still confuse with crime the need for welfare or the need for work?" Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L.J. 1, 12 (1960).

Finally, we reject the thought that over the years the use and application of this type of law will somehow "average out" to be a worthwhile tool in the administration of justice. "[A]verages in the administration of justice do not avail the person who is wronged grievously in his own, particular case. The appeal to time and patience may assist in evolving better concepts and techniques for future use of the profession, but it cannot excuse or exonerate our sending an innocent man to the penitentiary here and now. Enlightenment tomorrow or elsewhere will not serve, for his destiny rests in our hands today, and our sense of injustice . . . forbids us to be patient at his cost." Cahn, The Consumers of Injustice, 34 N.Y.U.L. Rev. 1166, 1176 (1959). See also: City of Seattle v. Drew 423 P.2d 522 (Wash. 1967); Territory of Hawaii v. Anduha, 48 F.2d 171 (9 Cir. 1931); Shuttlesworth v. City of Birmingham, 382 U.S. 87 (1965).

The peremptory writ of prohibition heretofore issued in each case is made permanent.

ZENOFF, J., concurs.

COLLINS, J., dissenting:

The court rules unconstitutional the Las Vegas vagrancy ordinance because it makes a crime of status. In other words, society is not punishing an overt act coupled with intent, classically the elements of a crime, but the "status or being" of a person at a given time, such as indigency, addiction to narcotics or alcohol, being a tramp or bum or idle or dissolute person.

The ordinance is declared unconstitutional on the authority of City of Reno v. District Court, 83 Nev. 201, 427 P.2d 4 (1967) (to which I dissented, and in which dissent I persist); Robinson v. California, 370 U.S. 660 (1962); and the dissenting opinion of Justice Douglas in Hicks v. District of Columbia, 383 U.S. 252 (1966).

But the fact remains the United States Supreme Court has refused so far to declare the true vagrancy type of statutes dealing with status unconstitutional. Edelman v. California, 344 U.S. 357 (1953); Hicks v. District of Columbia, 383 U.S. 252 (1966).

The main attack on the constitutionality of vagrancy statutes comes from legal writers rather than the courts. "One cannot escape the conclusion that the administration of vagrancy-type laws serves as an escape hatch to avoid the rigidity imposed by real or imagined defects in criminal law and procedure. * * * If it is necessary to ease the prosecution's burden of proof or to legalize arrests for mere suspicion, then

the grave policy and constitutional problems posed by such suggestions should be faced." Foote, Vagrancy-Type Law and Its Administration 104 U.Pa.L.Rev. 603, 649 (1956). "They [vagrancy laws] reflect a disregard for basic and essential elements of effective criminal theory in that the vagrancy concept replaces actual causation of criminal harm with 'suspicion causation' and substitutes status for the traditional requirement of conduct. The necessarily vague cast of these statutes, furthermore, gives rise to serious doubt as to their constitutional validity—both on their face and as enforced." Dubin and Robinson, The Vagrancy Concept Reconsidered, 37 N.Y.U.L.Rev. 102, 104 (1962). "There is little dissent from the conclusion that the vagrancy law is archaic in concept, quaint in phraseology, a symbol of injustice to many and very largely at variance with prevailing standards of constitutionality." Sherry, Vagrants, Rogues and Vagabonds— Old Concepts in Need of Revision, 48 Cal.L.Rev. 557, 566 (1960).

Courts on the other hand have generally upheld the constitutionality of the vagrancy-type statutes. In re Cregler, 363 P.2d 305 (Cal. 1961); State v. Starr, 113 P.2d 356 (Ariz. 1941); People v. Bell, 115 N.E.2d 821 (N.Y. 1953); State v. Harlowe, 24 P.2d 601 (Wash. 1933); Levine v. State, 166 A. 300 (N.J.Ct.Err. & App. 1933); Dominguez v. City and County of Denver, 363 P.2d 661 (Colo. 1961); City of Portland v. Goodwin, 210 P.2d 577, rehearing denied 210 P.2d 586 (Ore. 1949); Taft v. Shaw, 225 S.W. 457 (Mo. 1920). Contra: Lanzetta v. New Jersey, 306 U.S. 451 (1939). Vagrancy laws have for their purpose a salutary object. They give the police a weapon to be used for the prevention of crime. "They [vagrancy laws] are designed to prevent crime and if the officer must wait until a crime is committed, the preventive purposes of the statute wholly fail." Beail v. District of Columbia, 82 A.2d 765, 767; reversed on other grounds, 201 F.2d 176 (D.C. Cir. 1952). "No doubt the purpose of the lawmakers * * * was to eliminate the tendency to commit crime which such condition fosters." Lucas v. State, 238 P. 502 (Okla. 1925). Prevention, within the area of criminal law, is greatly undeveloped. The doctrine is widely practiced and constantly undergoing development in business and medicine, but unfortunately not within the law. It is undoubtedly the key to successful handling of juvenile offenders, but because of a traditional concept that only an act accompanied by wrongful intent is punishable,

criminal law has lagged far behind. Perhaps, other than a feeble effort within the vagrancy field, the only other area of criminal law dealing with prevention of crime is the peace bond. There, following usual criminal procedure, a person is placed under bond to prevent or restrain commission of another crime, usually assault and battery. It is important, if constitutionally permissible, to sanction a statute whereby crime can be prevented.

The problem is not so much with vagrancy statutes themselves, but in the manner in which they are enforced. "Rather, the vagrancy laws, vaguely phrased, requiring no showing of specific criminal conduct for conviction, and under which arrest without a warrant is generally permitted, have provided the police with an effective tool for circumventing the 'real or imagined defects in criminal law and procedure.' " Dubin and Robinson, The Vagrancy Concept Reconsidered, supra, 129. Because vagrancy laws are for the most part misdemeanors, enforced mainly against the poor, the uneducated, the sodden and the weak, seldom is there substantial and broad review of convictions on appeal. The answer to those problems, however, lies not with the law, but in upgrading the quality of misdemeanor courts, judges and police forces.

The main constitutional attack on vagrancy laws is that they can be construed as crimes of status rather than conduct, 37 N.Y.L.Rev. 114, 115 (1962), arising out of idleness or indigency, Edwards v. California, 314 U.S. 160 (1941). In *Edwards,* Mr. Justice Jackson said, " 'Indigence' in itself is neither a source of rights nor a basis for denying them. The mere state of being without funds is a neutral fact—constitutionally an irrelevance, like race, creed, or color." But, if the idleness and resulting indigency are purposefully brought about by a person, rather than resulting from some factor over which he has no control, are we not encouraging by law intentional idleness, a condition which will soon sap the strength of our nation and contribute to its downfall? Under the guise of glorifying personal liberty as the paramount object of our constitution, are we not encouraging idleness and clothing it with acceptability and respectability?

But without great difficulty vagrancy statutes can be rewritten, making clear that conduct, not status, is the crime. See Sherry, Vagrants, Rogues and Vagabonds—Old Concepts in Need of Revision, supra, pp. 569 to 572. The 1967 Nevada legislature took a large step in this direction in revising the substantive criminal law of Nevada. Vagrancy was completely

redefined in Chapter 211, Stats. Nev. 1967, p. 458,[1] which amended NRS 207.030. The clear purport of the amendment is to make certain defined acts the crime rather than status. Furthermore, the charter of the City of Las Vegas was revised by the same legislature requiring the city to modify its vagrancy ordinance to conform substantially to the statutory definition of vagrancy quoted above. Chaper 526, Stats. Nev. 1967.

I respectfully dissent.

---

[1]"Every person is a vagrant who:

"(a) Solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view;

"(b) Solicits any act of prostitution;

"(c) Is a pimp, panderer or procurer or lives in or about houses of prostitution;

"(d) Accosts other persons in any public place or in any place open to the public for the purpose of begging or soliciting alms;

"(e) Goes from house to house begging food, money or other articles, or seeks admission to such houses upon frivolous pretexts for no other apparent motive than to see who may be therein, or to gain an insight of the premises;

"(f) Keeps a place where lost or stolen property is concealed;

"(g) Loiters in or about any toilet open to the public for the purpose of engaging in or soliciting any lewd or lascivious or any unlawful act;

"(h) Loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification;

"(i) Is found in any public place under the influence of intoxicating liquor, or any drug, or the combined influence of intoxicating liquor and any drug, in such a condition that he is unable to exercise care for his own safety or the safety of others, or by reason of his being under the influence of intoxicating liquor, or any drug, or the combined influence of intoxicating liquor and any drug, interferes with or obstructs or prevents the free use of any street, sidewalk or other public way;

"(j) Loiters, prowls or wanders upon the private property of another, in the nighttime, without visible or lawful business with the owner or occupant thereof, or who, while loitering, prowling or wandering upon the private property of another, in the nighttime, peeks in the door or window of any inhabited building or structure located thereon, without visible or lawful business with the owner or occupant thereof; or

"(k) Lodges in any building, structure or place, whether public or private, without the permission of the owner or person entitled to the possession or in control thereof.

"2. Every vagrant is guilty of a misdemeanor."