CLIFF RAYMOND CLINE, Appellant, *v.* CLARK COUNTY LIQUOR AND GAMING LICENSING BOARD, Respondent.

No. 7590

May 20, 1975                               535 P.2d 783

*Harry E. Claiborne,* and *Annette R. Quintana,* of Las Vegas, for Appellant.

*George E. Holt,* District Attorney, Clark County, and *George F. Ogilvie, Jr.,* County Counsel, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

The Clark County Liquor Board voted to revoke the liquor license of Cliff Raymond Cline, operator of the Playhouse Lounge on "The Strip" in Las Vegas. Upon review by certiorari, the district court affirmed and this appeal followed.

Statute empowers the liquor board to grant or refuse liquor licenses and to revoke such licenses whenever there is "sufficient reason." It also requires the board to enact ordinances regulating the sale of intoxicating liquors and prescribing the conditions under which liquor may be sold or disposed of. NRS

244.350(1)(2).[1] Pursuant thereto, Clark County Code 8.20.-570(e) was enacted, which, in relevant part, authorizes the liquor board to revoke the license of a licensee "who shall permit his licensed premises to be frequented by, or to become the meeting place, hangout, or rendezvous for known prostitutes. . . ."[2]

1. The ordinance as written would allow license revocation or other penalty for the mere presence of known prostitutes and other specified classes of persons who congregate upon the licensed premises.

The Supreme Court of California has struck down a similar code provision. Vallerga v. Department of Alcoholic Beverage Con., 347 P.2d 909 (Cal. 1959). The code provided for license

[1]NRS 244.350: "1. The board of county commissioners in each of the several counties, and the sheriff of any county which does not have a metropolitan police department under the provisions of chapter 280 of NRS, are empowered and commissioned, for the purposes of this section, to act jointly, without further compensation, as a liquor board, to grant or refuse liquor licenses, and to revoke such licenses whenever there is, in the judgment of a majority of the board, sufficient reason for such revocation.

2. It is hereby declared to be the power and duty of the liquor board in each of the several counties to enact ordinances:

(a) Regulating the sale of intoxicating liquors in their respective counties.

(b) Fixing the hours of each day during which liquor may be sold or disposed of.

(c) Prescribing the conditions under which liquor may be sold or disposed of.

(d) Prohibiting the employment or service of females or minors in the sale or disposition of liquor.

(e) Prohibiting the sale or disposition of liquor in places where, in the judgment of the board, such sale or disposition may tend to create or constitute a public nuisance, or where by the sale or disposition of liquor a disorderly house or place is maintained."

[2]Clark County Code 8.20.570:

"In conformity with the policy and aim of this chapter each and every of the following classes of licensees are declared to be licensees whose existing liquor licenses may be restricted, suspended or revoked, or who may be penalized in an amount not to exceed twenty-five thousand dollars. . . .

. . . .

(e) Each licensee, who shall permit his licensed premises to be frequented by or to become the meeting place, hangout, or rendezvous for known prostitutes, homosexuals, vagrants, known hoodlums, persons described as undesirables in liquor operations or those who are known to engage in the use or distribution of illegal narcotics or in any other illegal occupation or business."

suspension or revocation "where the portion of the premises of the licensee upon which the activities permitted by the licensee are conducted are a resort for illegal possessors or users of narcotics, prostitutes, pimps, panderers, or sexual perverts." That court wrote: "It is concluded, therefore, that subdivision (e) purports to authorize revocation of a license without requiring anything more to be shown than that the premises are a resort for certain classes of persons, and as such is unconstitutional. . . ." Id. at 912.

It is established beyond peradventure that the mere presence of prostitutes, homosexuals or other "undesirable" classes of persons in the licensed premises is not an adequate ground upon which to revoke a liquor license. Stoumen v. Reilly, 234 P.2d 969, 971 (Cal. 1951); Vallerga v. Department of Alcoholic Beverage Con., supra; One Eleven W. & L. Inc. v. Division of Alcoholic Bev. C., 235 A.2d 12 (N.J. 1967); See ·Annot., 27 A.L.R.3d 1254. Such persons have a right to congregate in licensed business establishments so long as their behavior conforms to currently acceptable standards of decency and violates no legal proscription. One Eleven W. & L. Inc. v. Division of Alcoholic Bev. C., supra.

Conceptually, the problem tendered in this case is not dissimilar to those before this court in City of Reno v. Second Judicial District Court, 83 Nev. 201, 427 P.2d 4 (1967), and Parker v. Municipal Judge of City of Las Vegas, 83 Nev. 214, 427 P.2d 642 (1967). In the *City of Reno* case we found that the "disorderly conduct" ordinance violated due process since its effect was to make status a crime. Punishment was prescribed for one's personal condition of simply being what he was, rather than for the doing of an act. And, in *Parker,* we held unconstitutional an ordinance which made the status of poverty a crime.

And so in this case, if the prostitutes who congregated in Cline's Playhouse Lounge are not themselves liable to prosecution for their status as prostitutes, it follows that the licensee of the public business establishment where prostitutes congregate may not be subjected to penalty for their mere presence.

2. In the case before us the record may be read to show that something more than the mere congregation of prostitutes occurred in the Playhouse Lounge. As observed by the district court, "during the late evening of May 23, 1973, and the early morning of May 24, 1973, there were no fewer than five acts of solicitation in the licensed premises; and that in at least one of these acts of solicitation a bartender acted as a knowledgeable intermediary." That court therefore concluded that the

liquor board reasonably could find that the licensee, his agents or employees knew, or in the reasonable supervision of the premises should have known, that acts of solicitation had occurred and failed to act to prevent it.

The district court was aware of the inherent infirmity of the ordinance, but by interpretation sought to supply missing requisites. That court stated: "The court believes it fair to say that subsection (e) requires, in addition to the presence of any of the enumerated classes of people, that there be improper acts committed on or within the licensed premises. In the view of the court, this requirement is reasonably implied for, indeed, how else would these proscribed persons become 'known' to the licensee?"[3]

The court's reasoning is not without force, but we do not accept it. In this case, as in Vallerga v. Department of Alcoholic Beverage Con., supra, "the language of that subdivision is too clear and unambiguous to permit any other meaning than that which the literal language conveys. . . . To hold that by such language the Legislature intended that grounds for revocation existed only when objectionable conduct took place on the premises would constitute judicial legislation under the guise of interpretation. This we are not permitted to do because it would amount to an invasion of a field committed in its entirety to the legislative branch of government." Id. at 911.

We need not decide whether the evidence before the board would have permitted license revocation had the ordinance been constitutionally written. A revocation under the auspices of an ordinance which is unconstitutional on its face cannot stand. The ordinance may easily be amended so as to avoid its potential for governmental abuse of licensees and patrons. It is far more important that this be accomplished than it is to devise a way to uphold the board's action in this instance. Effective law enforcement requires a constitutional foundation.

Reversed.

GUNDERSON, C. J., and BATJER, ZENOFF, and MOWBRAY, JJ., concur.

---

[3]It is apparent that proscribed persons may become "known" to the licensee in other ways than that of committing improper acts on his premises. Law enforcement officers may advise the licensee of the identity of such persons. The persons, themselves, may advise the licensee of their status without doing anything improper. Consequently, the licensee may have "knowledge" in the absence of improprieties being committed on his premises.