LINDA DINITZ, Petitioner, v. THE HONORABLE CARL CHRISTENSEN, DISTRICT JUDGE, EIGHTH JUDICIAL DISTRICT COURT, Respondent.

No. 9849

April 25, 1978                                    577 P.2d 873

*Alan B. Andrews,* Las Vegas, for Petitioner.

*Robert List,* Attorney General, Carson City; *George E. Holt,* District Attorney, and *Thomas D. Beatty,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

Petitioner offered for money to copulate orally a man in the parking lot of a Las Vegas hotel. She was convicted pursuant to the subsection of Nevada's vagrancy statute making illegal the solicitation of any act of prostitution and fined $25. The district court affirmed her conviction and denied her challenge to the constitutionality of the vagrancy statute. She has brought this proceeding in certiorari to review that ruling. The proceeding is authorized. NRS 34.020(3); City of Reno v. District Court, 83 Nev. 201, 427 P.2d 4 (1967).

Petitioner challenges the statute, NRS 207.030, on five different premises. She contends that the statute denies due process in that it makes status a crime; is vague requiring a person of ordinary intelligence to quess at its proscriptions; places unfettered discretion at the disposal of law-enforcement authorities; and is overbroad, including within its scope acts nonculpable as well as culpable. Finally, she maintains that her Fourth Amendment rights are denied by application of the statute. We answer each claim in the negative.

NRS 207.030 in relevant part provides: "1. Every person is a vagrant who: . . . (b) Solicits any act of prostitution . . . 2. Every vagrant is guilty of a misdemeanor."

Petitioner was convicted under subsection 1(b).

In a general constitutional challenge, petitioner, citing *City of Reno, supra;* Parker v. Municipal Judge, 83 Nev. 214, 427 P.2d 642 (1967), contends that NRS 207.030(1)(b) punishes status not behavior. In those cases, for example, simply being unemployed *(Parker)* or having an evil reputation *(City of*

*Reno)* would subject an individual to possible punishment. Here, petitioner was convicted because she actively solicited prostitution. The distinction is indeed one of punishment for conduct as opposed to punishment for status and, as such, is fatal to petitioner's challenge.

The fallacy of petitioner's logic is her premise that vagrancy is unpunishable. There is no *per se* constitutional infirmity in punishing vagrants. The sole concern of the judiciary is to assure that the definition of vagrancy not include mere status. Absent liability premised upon status, *cf. City of Reno, supra; Parker, supra;* Papachristou v. City of Jacksonville, 405 U.S. 156 (1972), the legislature is free to exercise discretion in punishing vagrancy. defined in terms of culpable overt behavior.

Subordinately, the vagrancy statute is challenged on the premise that it is so vague and overbroad so as to violate due process. The primary authority upon which petitioner relies is *Papachristou, supra.* Petitioner quotes this case at length and offers it for support of her due process and overbreadth allegations. However, the Florida ordinance in *Papachristou* clearly made status a crime and is inapposite to the instant case.

Recently, the California Supreme court, in reviewing a statute that is virtually identical to the one in question, declared that this "solicitation provision . . . is not so vague as to deny an accused due process of law under the federal or California Constitutions." People v. Superior Court of Alameda County, 562 P.2d 1315, 1317 (Cal. 1977). The words "every person . . . who solicits any act of prostitution" are clear and unambiguous. NRS 207.030(1)(b) clearly gives a person of ordinary intelligence fair notice that his contemplated conduct is proscribed by law. United States v. Harriss, 347 U.S. 612 (1954). The solicitation provision of the Nevada vagrancy statute is constitutional.

Nor do we perceive the law as encouraging arbitrary and erratic arrests and convictions. Thornhill v. Alabama, 310 U.S. 88 (1940); Herndon v. Lowry, 301 U.S. 242 (1937). Our interpretation is consistent with the legislative object and policy underlying the statute. The legislative purpose in proscribing solicitation for prostitution is to eliminate this type crime. The crime requires overt solicitation for purposes of prostitution. The dangers of harassment and unfettered police discretion pointed out in *City of Reno, supra,* are not here present . Additionally, the justification for the proscription under review is

within the legitimate reach of Nevada's police power. *See,* Fenster v. Leary, 229 N.E.2d 426 (N.Y. 1967).

Petitioner's Fourth Amendment claim is equally without merit. Law-enforcement officers may make arrests only on "probable cause," a Fourth and Fourteenth Amendment standard applicable to states, as well as the federal government. Mapp v. Ohio, 367 U.S. 643 (1961). Overt acts of solicitation for prostitution as a precondition to an arrest are required under NRS 207.030(1)(b), thereby meeting the "probable cause" requirement. *Papachristou, supra; City of Reno, supra.*

This proceeding is dismissed and the judgment below is affirmed.

BATJER, C. J., and MOWBRAY and THOMPSON, JJ., concur.

GUNDERSON, J., dissenting:

This case is one of several primarily assigned to our colleague Manoukian, for which he recently has circulated somewhat extended "authored" opinions—after having the cases removed from our argument calendar, and submitted without a hearing. Heretofore, we have reserved such drastically attenuated procedures for matters which were rather clearly subject to summary disposition, and in which oral argument was unlikely to aid other members of the court. In the past, we have not considered it appropriate to foreclose oral argument in cases worthy of "authored" opinions, ostensibly issued as precedent.

Most respectfully, I submit we should adhere to our established practice. If a case indeed may be disposed of summarily, through a brief "memorandum" or a "per curiam" opinion, sound judicial administration dictates that we do so, thereby avoiding the confusion which unnecessary verbiage commonly causes—and thereby conserving judicial time, and space in our legal volumes, to consider issues of novelty and moment. As stated by three of America's most respected legal scholars, in discussing the appellate process:

> *The Memorandum Decision.* A short form of opinion can, in many cases, serve both of the interests involved [in a written opinion]: It can give reasons sufficient to explain the decision, while at the same time avoiding the expenditure of undue energy or time in trying to lay out a full exposition of the facts and the analysis in deathless legal

prose for posterity—and pride. Thus we recommend much more use of the short form.[1]

On the other hand, if a matter indeed has value as precedent—which presumably it must, if it truly warrants a full "authored" opinion—then I believe that the Justice primarily responsible for the case should continue to see that a bench memorandum is prepared, and should permit the rest of the court to hear oral argument from counsel. In a court as pressed as ours, I deem this essential to preserve some semblance of collegiate review, so that our decisions will retain some value as precedent, rather than becoming totally "one-man opinions." If I understand them correctly, my other colleagues, who have elected to sign the opinion submitted by our colleage Manoukian, do not disagree with these views. However, they agreed to and did sign the above opinion, even though they acknowledged they had reviewed neither the briefs nor the record. Nor had they reviewed the memorandum which our colleague Manoukian acknowledged he had his law clerk prepare for his private use.[2]

I do not wish to belabor what I hope the future will prove to be a passing aberration in the procedures of this court. However, I now feel constrained at least to note my opposition to such practices, which if need be I will hereafter document to be unacceptable appellate methodology, by reference to scholarly

[1]P. Carrington, D. Meador and M. Rosenberg, *Justice on Appeal,* 33 (1976). Paul Carrington is Professor of Law at the University of Michigan; Daniel M. Meador is James Monroe Professor of Law at the University of Virginia; Maurice Rosenberg is Harold Medina Professor of Law at Columbia University. All are highly respected authors and authorities on judicial administration, and their joint work, just cited, was accomplished with a grant from the National Institute of Law Enforcement and Criminal Justice. Professor Meador currently is on leave, serving as "Assistant United States Attorney General for Improvement of the Administration of Justice." Among his other writings on the appellate process is the country's leading work on use of staff in appellate courts, i.e., *Appellate Courts: Staff and Process in the Crisis of Volume* (1974), written as an appellate justice project for the National Center for State Courts. According to Meador and his colleagues:

"The essential characteristics of the memorandum decision are that it is not signed by a single author; it is addressed to the parties, not to the public at large; and it is.as short as possible, consistent with the imperatives." *Justice on Appeal,* 33. In Appendix B of their joint work, Professors Carrington, Meador and Rosenberg set forth a number of illustrations which establish that, for routine cases, "memorandum" or "per curiam" opinions are more efficient and informative, and much less costly for many reasons, than so-called "authored" opinions.

[2]According to our colleague Manoukian, in at least one of the cases to which he denied oral argument, the draft he ultimately prepared did not even reach the same result as his law clerk's privately submitted memorandum. This surely indicates how dangerous it is to establish precedent in total reliance on any one Justice.

authorities. For example, in a section of their joint work, *Justice on Appeal,* entitled ''Curtailing Oral Argument: A Mis-Step,'' Professors Carrington, Meador and Rosenberg have said:

> As we have noted, oral argument gives important service to the imperatives of appellate justice. Specifically, it heightens the judges' sense of personal responsibility. It provides them with an opportunity to test their own thinking in a direct way with counsel available to correct error. Some judges assimilate ideas more readily by oral than by written transmission; and some ideas are more readily transmitted by oral means. Thus, the quality of decisions is likely to be enhanced. *Ibid.* at 17.

The need to cope with burgeoning caseload is forcing America's courts not only to undertake many worthwhile innovations, but also to adopt a variety of expedients many lawyers and judges find regrettable. However, for a collegiate appellate court to reach the point where it is deciding cases for precedent on the authority of one judge—without its other members reading the briefs or record, and without oral argument—I consider close to the ultimate compromise. As burdened as we may think ourselves, we should not resort to this practice.

Being conscientiously of the view that the procedures employed to reach an apparent consensus are inconsistent with sound judicial administration, I cannot endorse the above opinion. Moreover, having read the briefs and the record, it does not appear to me that the above opinion clearly meets petitioner's principal issue.[3]

---

[3]Although the above opinion labors at some length to establish the point, petitioner has expressly conceded that acts such as lewdness and prostitution may be made the subject of punishment. The thrust of petitioner's central argument is: ''*Per se* criminal acts have been lumped together with non-criminal acts.'' In my view, if this case warrants an ''authored'' opinion, this is so only because of petitioner's ''overbreadth'' argument, which proceeds in part:

> The statute before the Court criminalizes activities which by modern standards are innocent. Being idle without visible means of support is one. 405 U.S. 163. Loitering or wandering upon public streets ''without the permission of the owner is still another. The qualification in section (h) (''without visible or lawful business . . .'') is a trap for otherwise innocent acts. 405 U.S. 164. ''Nightwalkers'' could be condemned under NRS 207.030 for no other reason that the walker refused to ''identify himself and to account for his presence when requested by any peace officer so to do.''

In *Lazarus* v. *Faircloth,* 301 F.Supp. 266 (1969), a three-judge federal court declared the Florida ''vagrancy'' statute to be void for overbreadth. Certain language of the Court is particularly apropos to the facts herein:

"In many respects, the statute reflects the historic verbiage of vagrancy laws which date back 620 years to the English Statutes of Laborers. More importantly, it mirrors the ancient philosophy of the 'poor laws.' And so, in a day when terms such as 'serfdom' and 'feudalism' are proper subjects for grade school ancient history classes, we face a penal statute which historically was designed as a substitute for serfdom."

The *Lazarus* court then declared:

"An adjunct of the vagueness argument and an additional vice of this statute is its obvious overbroadness. Because of its vague language, it may be used to 'criminalize' conduct which is beyond the legitimate reach of the state's police power. That is, it punishes conduct of an individual which in no way impinges on the rights or interests of others." 301 F.Supp. at 272.

Because of its overbreadth, the entire statute was declared unconstitutional:

"While there may be some valid segments to this statute, . . . they are so inextricably intertwined with the invalid that it is impossible to separate the wheat from the chaff and to sever that which could remain." 301 F.Supp. at 273.

As in *Lazarus,* there can be no saving NRS 207.030 from the constitutional hatchet. The vice of overbreadth inherent in this statute demands that it be declared invalid.

If this "overbreadth" argument can be considered addressed at all by the above opinion, I respectfully submit the treatment is so subtle that its significance may evade many, as it does the undersigned.