STATE OF NEVADA; STATE OF NEVADA GAMING COMMISSION AND STATE OF NEVADA GAMING CONTROL BOARD, APPELLANTS, v. FRED J. GLUSMAN AND INTERNATIONAL DRESS SHOP, INC., RESPONDENTS.

No. 12946

FRED J. GLUSMAN AND INTERNATIONAL DRESS SHOP, INC., APPELLANTS, v. STATE OF NEVADA; STATE OF NEVADA GAMING COMMISSION, AND STATE OF NEVADA GAMING CONTROL BOARD, RESPONDENTS.

No. 13217

September 30, 1982                                    651 P.2d 639

*Richard H. Bryan,* Attorney General, *Patricia W. Becker,* Chief Deputy Attorney General, Carson City; *Nikolas L. Mastrangelo,* Deputy Attorney General, Clark County, for State of Nevada, State of Nevada Gaming Commission, and State of Nevada Gaming Control Board.

*George E. Graziadei, Scott Michael Cantor,* Las Vegas; *Shellow, Shellow & Glynn,* Milwaukee, Wisconsin, for Fred J. Glusman, and International Dress Shop, Inc.

*Frank W. Daykin,* Carson City, for Legislative Commission as Amicus Curiae.

414

## OPINION

By the Court, STEFFEN, J.:

These consolidated appeals stem from issues involving the constitutional validity of Nevada gaming statute NRS 463.160(8)(a), hereinafter frequently referred to as "the statute",[1] and the jurisdiction of the district court to grant injunctive relief against the implementation thereof by state gaming authorities. After preventing enforcement of the statute through issuance of a preliminary injunction, the district court

[1]NRS 463.160(8)(a) is the applicable statute designated in effect in 1980. *See* NRS 463.167(2).

determined that the legislation was constitutional and dissolved the injunction. We qualifiedly affirm the decision supporting the statute, but hold that the district court was without jurisdiction to enjoin its enforcement.

Frederick J. Glusman is an officer, director and sole shareholder of International Dress Shop, Inc. (International). International is engaged in the retail clothing business on the premises of the Las Vegas Hilton and Stardust hotels under the name of Fredde's Dress Shops. The International shops at the Hilton and Stardust have operated continuously under leases dated in 1968 and 1977, respectively.

Pursuant to the recommendation of the Nevada Gaming Control Board (Board), the Nevada Gaming Commission (Commission) issued an order directing Glusman to apply to the latter agency for a determination of suitability to be associated with a gaming enterprise. The statutory authority for the order, NRS 463.160(8)(a), reads as follows:

> If the premises of a licensed gaming establishment are directly or indirectly owned or under the control of the licensee therein, or of any person controlling, controlled by, or under common control with the licensee, the commission may, upon recommendation of the board, require the application of any business or person for a determination of suitability to be associated with a gaming enterprise if the person or business:
>
> (a) Does business on the premises of the licensed gaming establishment.

Glusman responded to the order by filing a complaint for declaratory and injunctive relief with the district court, asserting constitutional infirmity in the questioned statute. The district court granted Glusman and International a preliminary injunction from which the State of Nevada, State of Nevada Gaming Commission and State of Nevada Gaming Control Board (the State) appealed under Case No. 12946. During the pendency of the latter appeal, the district court heard the complaint for declaratory relief and held against Glusman and International, thus prompting the appeal in Case No. 13217. (Hereafter, for purposes of this opinion, Glusman and International will alternatively be referred to as appellants).

In a major sense, the determination of the issues before us is dictated by the unique setting of the Nevada gaming industry. The peculiar nature of the gaming industry presents numerous concerns and problems of control, the resolution of which must be readily available to cognizant government authorities

of this state. It has been clearly recognized by our earlier decisions that gaming longevity and vitality, under continuing state authority, are dependent upon effective control mechanisms which will assure appropriate deference to the health, safety and welfare of the citizenry. It is in that context that the Nevada Legislature has enacted legislation designed to provide effective and timely management of the gaming industry. NRS ch. 463.

We turn first to the question of the injunctive relief provided by the district court in Case No. 12946. Ordinarily this issue would fall prey to the mootness doctrine since the injunction has been dissolved. It is, however, within the inherent discretion of this Court to consider issues of substantial public importance which are likely to recur, in spite of any intervening event during the pendency of an appeal which has rendered the matter moot. In Re M, 473 P.2d 737, 741-743 (Cal. 1970). The instant action poses such an issue and we deem it worthy of resolution.

Appellants attempt to posture themselves outside the purview of NRS 463.343 (the declaratory judgments provision of the gaming chapter) by disclaiming the status of "applicant, licensee or person found suitable." This contention is without merit. The statutory definition of "applicant"[2] clearly includes those who have been ordered to apply for a finding of suitability. Having so held, the question then arises as to whether appellants may nevertheless circumvent the dictates of NRS 463.343 by petitioning the district court under the Uniform Declaratory Judgments Act, NRS ch. 30, for declaratory relief and a stay of proceedings. The court below erroneously decided in the affirmative. The power of the legislature to restrict the availability of injunctive relief by the judiciary in gaming matters is well established. Gaming Control Bd. v. Dist. Ct., 82 Nev. 38, 409 P.2d 974 (1966). If appellants' position were to prevail, it would render NRS 463.343 selectively nugatory and allow effective avoidance of the prohibition against injunctive jurisdiction by the judiciary within statutorily defined areas of gaming. Accordingly, we hold that NRS 463.343(5)(b) effectively deprived the district court of jurisdiction to entertian injunctive relief to appellants and that the

---

[2]NRS 463.0134 defines applicant as follows:

[A]ny person who has applied for or is about to apply for a state gaming license, manufacturer's license . . . or finding of suitability under the provision of this chapter. . . .

granting of such relief was error. Other issues on this point are defused by our holding and will not be discussed.

We are asked by the state to sidestep the constitutional issues raised by appellants in Case No. 13217 in deference to the doctrine of exhaustion of administrative remedies. The "exhaustion doctrine" is a salutary one which often fully and finally resolves disputes without need for litigation. First Am. Title Co. v. State of Nevada, 91 Nev. 804, 543 P.2d 1344 (1975). In the instant case, appellants elected to disregard their administrative remedies under the apparent assumption that relief would be withheld by the administrative agencies. There is nothing in the record indicating appellants would have succumbed to a deaf ear had they sought exemption from a finding of suitability by the Commission. However, convinced of the unconstitutionality of NRS 463.160(8)(a), appellants opted to refuse any semblance of cooperation with the gaming authorities. Since we have held that a stay of proceedings was unavailable under NRS ch. 30, and since such relief was available pursuant to NRS 463.343(4), it follows that appellants should have proceeded under the latter statute and exhausted their administrative remedies.

Although we are reluctant to circumvent the exhaustion doctrine, there are compelling reasons for doing so in this case. The constitutional issues, which may have remained submerged through an administrative proceeding, have been met and decided by the district court in an adversary posture and were subjected to critical analysis in the context of an actual controversy. Further, it is within our discretion not to apply the exhaustion doctrine especially where the issues relate solely to the interpretation or constitutionality of a statute. Cafferello v. U.S. Civil Serv. Com'n, 625 F.2d 285 (9th Cir. 1980); Frontier Airlines v. C.A.B., 621 F.2d 369 (10th Cir. 1980); Public Utilities. Comm. v. United States, 355 U.S. 534 (1958). Finally the magnitude of the issues and the likelihood of their future recurrence justify a present judicial determination on the merits.

Appellants assert error by the district court in finding NRS 463.160(8)(a) constitutional on its face and as applied to them. We do not agree. We have long recognized, as a general principle, that statutes should be construed, if reasonably possible, so as to be in harmony with the constitution. Copeland v. Woodbury, 17 Nev. 337, 30 P. 1006 (1883); cited with approval

in Milchem Inc. v. District Court, 84 Nev. 541, 445 P.2d 148 (1968). In the face of attack, every favorable presumption and intendment will be brought to bear in support of constitutionality. As previously held, "[a]n act of the legislature is presumed to be constitutional and should be so declared unless it appears to be clearly in contravention of constitutional principles." State *ex rel.* Tidvall v. Eighth Judicial District Court, 91 Nev. 520, 526, 539 P.2d 456, 460 (1975). In the case before us, the statute attacked must be considered in light of this state's policy regarding the gaming industry as expressed in NRS 463.-130(1). NRS 463.130(1) provides in pertinent part:

> (c) Public confidence and trust can only be maintained by strict regulation of all persons, locations, practices, associations and activities related to the operation of licensed gaming establishments and the manufacture or distribution of gambling devices and equipment.
>
> (d) All establishments where gaming is conducted and where gambling devices are operated, manufacturers, sellers and distributors of certain gambling devices and equipment in the state shall therefore be licensed, controlled and assisted to protect the public health, safety, morals, good order and general welfare of the inhabitants of the state, to foster the stability and success of the gaming industry and to preserve the competitive economy and policies of free competition of the State of Nevada.[3]

As used in this provision, the word establishment is defined as "any premises wherein or whereon any gaming is done."[4]

Appellants first contend that NRS 463.160(8)(a) is constitutionally infirm by reason of vagueness and overbreadth. The criterion under which we examine the assertion of vagueness is whether the statute "either forbids or requires the doing of any act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. . . ." Connally v. General Construction Co., 269 U.S. 385 (1926) cited by this Court in In re Laiolo, 83 Nev. 186, 426 P.2d 726 (1967). Equally important in a facial challenge for vagueness is whether the statute impinges upon First Amendment freedoms. If not, a statute may be stricken as unconstitutionally vague only if it is found to be so "in all of its applications." Hoffman Estates v. Flipside, Hoffman Estates, 455

---

[3]NRS 463.130 is the applicable statute designated in effect in 1980. *See* NRS 463.0129.

[4]NRS 463.0190 is the applicable statute designated in effect in 1980. *See* NRS 463.0148.

U.S. 489, 71 L.Ed.2d 362 (1982). Further, our standard of review is less strict under a challenge for vagueness where the statute is directed at economic regulations. *Id.* at 371.

It is argued that the language of the statute fails to provide clarity of meaning or application, thereby subjecting those affected by the statute to uncertainty as to what constitutes acceptable conduct. It is true, of course, that the statute in question does not attempt to define the type of conduct which would actuate the investigatory machinery of the statute. Such definition is supplied, however, by reference to NRS 463.170(2).[5] The latter statute describes with specificity the standards of conduct applicable to a determination of suitability and, by converse logic, that conduct which is inconsistent with suitability and which, if suspected, may prompt invocation of the investigation and qualifying aspects of NRS 463.160(8)(a).

Under the terms of the statute, any person or entity that does business *on the premises* occupied by a specified, licensed gaming establishment may be required to apply for a determination of suitability. The statute is precise. Regulation 1.050(12) of the Commission defines "premises" to mean "land together with all buildings, improvements and personal property located thereon." It is clear that the purpose of the statute is to provide a basis for investigating and qualifying or disqualifying as suitable, persons and businesses who choose to conduct non-gaming business operations on the premises of a gaming establishment. This purpose is both legitimate and reasonable. Human experience has shown gaming to be like quicksilver, and unless controls are complete and resourceful, the industry will be fraught with conditions of potential threat to its continued existence.

The United States Supreme Court recently sustained a city ordinance challenged for impermissible vagueness in the case

---

[5]NRS 463.170(2) provides:

An application to receive a license or be found suitable shall not be granted unless the commission is satisfied that the applicant is:

(a) A person of good character, honesty and integrity;

(b) A person whose prior activities, criminal record, if any, reputation, habits and associations do not pose a threat to the public interest of this state or to the effective regulation and control of gaming, or create or enhance the dangers of unsuitable, unfair or illegal practices, methods and activities in the conduct of gaming or the carrying on of the business and financial arrangements incidental thereto; and

(c) In all other respects qualified to be licensed or found suitable consistently with the declared policy of the state.

of City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 71 L.Ed.2d 152 (1982). There the city ordinance under fire was a licensing ordinance for coin-operated amusement establishments. The ordinance included a provision directing the chief of police to, *inter alia,* investigate an applicant's "connections with criminal elements." In reversing the court of appeals, the high court held:

> The Federal Constitution does not preclude a city from giving vague or ambiguous directions to officials who are authorized to make investigations and recommendations. There would be no constitutional objection to an ordinance that merely required an administrative official to review 'all relevant information' or 'to make such investigation as he deems appropriate' before formulating a [licensing] recommendation. *Id.* at 161.

In the instant proceeding, the statute is merely an investigative vehicle for confirming or dispelling concerns over the suitability of a person or business to conduct business operations on the same premises as a gaming establishment. The application and implicit investigation in connection therewith represent the total operative scenario attributable to NRS 463.160(8)(a). Obviously, the finding of suitability referred to in the statute is analogous to the ultimate licensing purpose of the city ordinance in *Mesquite,* and in both instances the eventual critical determination must result from the evaluation of facts obtained from the investigation and applied to well-defined criteria requisite to suitability or licensure. Therefore, we hold that the challenged statute is not susceptible to constitutional infirmity for vagueness since it purports to do nothing more than provide a basis for an investigation preliminary to a determination of suitability.

Appellants also contend that the statute is overbroad because it impermissibly regulates all types of businesses irrespective of any nexus with gaming. Generally, an overbreadth argument is only available for the purpose of challenging the validity of statutes which chill First Amendment rights. Anderson v. State, 562 P.2d 351 (Alaska 1977). The Supreme Court in Moose Lodge No. 107, 407 U.S. 163, 168 stated:

> [w]hile the doctrine of 'overbreadth' has been held . . . to accord standing by reason of the 'chilling effect' that a particular law might have upon the exercise of the First Amendment rights, that doctrine has not been applied to constitutional litigation in areas other than those relating to the First Amendment.

In the case before us, none of appellants' First Amendment rights is impaired by reason of the questioned statute. Appellants do assert a denial of the First Amendment right to freedom of association, but such contention lacks merit. The type of association protected by the First Amendment is that which is related to the cherished right of freedom of speech, namely, "the freedom to associate for the promotion of political and social ideas." Lewitus v. Colwell, 479 F.Supp. 439 (D.C.Md. 1979), citing Bates v. Little Rock, 361 U.S. 516 (1960); Sweezy v. New Hampshire, 354 U.S. 234 (1957). Accordingly, appellants' argument supporting constitutional infirmity for overbreadth cannot prevail since appellants failed to demonstrate that NRS 463.160(8)(a) has any impermissible impact on First Amendment freedoms. The statute here challenged is constitutional on its face.[6]

Appellants maintain that the statute represents an excessive, pervasive and therefore, unconstitutional exercise of the police power of the state. Appellants concede the vital role of gaming in the economy of the state and further acknowledge the right of the state to regulate and control the gaming industry consonant with the health, safety and welfare of the public. They conclude, however, that since appellants operate dress shops and have no relationship to gaming, it is an unwarranted and unconstitutional intrusion on private rights to include them within the penumbra of the statute. It is unquestionably true that there are limitations on the police power of the state. Not only must the ends and means of the legislative enactment of the power be reasonable, but the objective of its exercise must be so manifestly in the public interest as to strongly justify any intrusion on the basic rights of individuals. Goldblatt v. Town of Hempstead, New York, 369 U.S. 590 (1962). However, appellants erroneously contend that NRS 463.160(8)(a) extends to all non-gaming businesses throughout the state. It does not. It applies only to businesses who elect to locate on certain premises shared by a gaming establishment. We hold that it is a reasonable exercise of the state's police power to subject businesses sharing premises with certain gaming establishments to a determination of suitability to be thus located. Having so held, however, does not dispose of the issue concerning the effect of the legislative scheme as applied to appellants.

Under the Nevada Gaming Control Act, the state is empowered to investigate and impose heavy sanctions, both civil and

---

[6]A facial challenge to a statute refers to a claim of invalidity of the entire statute and, if successful, would render it devoid of any valid application. Hoffman Estates v. Flipside, Hoffman Estate, *supra*.

criminal, for the violation of Nevada's gaming laws. The statute in question facilitates the investigation of such violations or suspected violations by requiring investigatees to submit a detailed application and supportive information to gaming authorities. A finding of suitability by the Commission does not, however, constitute a license to participate in gaming. It merely provides official validation of the applicant's right to continue its non-gaming business on the premises shared by a gaming enterprise. The "finding of suitability" thus constitutes a form of acquittal from whatever suspicions prompted the investigation. It leaves the "suitable" business in no better position than its non-gaming neighbors who remain impliedly "suitable" until such time as they might be called forward under the statute to justify their continued suitability. Indeed, an applicant who has survived the "suitability" process has sustained losses of time, effort and expense necessitated by the preparation and submission of a detailed application[7] required by the gaming authorities. More importantly, however, an applicant is subject to the payment of all investigative costs incurred by the state during the course of its investigation. NRS 463.331.

The combined effect of NRS 463.160(8)(a) and NRS 463.331(1) constitutes an unreasonable and fundamentally unfair burden on those who are required to submit to the qualifying procedures of the challenged statute. If the Commission determines that the applicant is "suitable," this simply means that the applicant is free of gaming involvement or impact and entitled to continue its non-gaming business on the same premises as a gaming establishment. The net effect to the non-gaming, "suitable" business could be financial decimation. We are thus faced with a situation where non-gaming applicants may be forced to underwrite their own financial demise even though they are totally free of gaming involvement. It is one thing to charge investigatory costs to those who are seeking licensure in the gaming industry; it is altogether different to subject one who, at least ostensibly, has no relationship to gaming beyond that of sharing space with a gaming enterprise, to potentially prohibitive costs of investigation as a condition precedent to the continuance of a non-gaming business. To impose such costs on non-gaming applicants is unreasonable and beyond the legitimate public purposes of the law. It is an impermissible

---

[7]The magnitude of the application is illustrated by the following requested information: Personal History Record (personal, marital, family, military, residence, employment and arrest information); and Invested Capital Questionnaire (detailed statement of all assets and liabilities).

extension of the police power to predicate a non-gaming applicant's economic survival upon an ability or willingness to underwrite the costs of investigation. There is no essential symbiosis between NRS 463.160(8)(a) and NRS 463.331(1). The right to investigate under the former need not depend on the discriminatory subvention of the latter. It is not within the scope or purpose of gaming control to selectively impose on non-gamers the financial burden of gaming enforcement.

It is unavailing to argue that since the costs of investigation may be waived by the Commission[8] no harm may in fact result from the cost assessment potential under NRS 463.331(1). A selective waiver of costs would serve to intensify the arbitrary and discriminatory effect of the provision. We accordingly hold that the combined effect of the aforementioned statutes is an unreasonable intrusion on the private rights of appellants and others similarly situated. *See* In re Kading, 235 N.W.2d 409 (Wis. 1975). Consequently, we declare that part of NRS 463.331(1) which assesses costs to applicants for findings of suitability an invalid and excessive use of the police power of the state.

Appellants insist that the district court erred in construing the statutory phrase, "associated with a gaming enterprise," to include them since they are assertedly not rationally tied to gaming. We disagree. The words of a statute should be construed, if reasonably possible, so as to accommodate the statutory purpose. Malat v. Riddell, 383 U.S. 564 (1966); Cummings v. City of Las Vegas Municipal Corp., 88 Nev. 479, 499 P.2d 650 (1972). It is manifestly clear that the statute would be shorn of any meaningful purpose if it were held to apply only to those who were overtly associated in the gaming industry. Such persons or associates would require gaming licenses and would be subjected to investigation incidental thereto, thereby rendering NRS 463.160(8)(a) completely redundant. On the other hand, it poses no threat to reason to view the phrase "associated with" in the context of a spatial relationship or association, i.e., a joining together in the use of the entire space referred to in the statute as "the premises". Such a connotation is consonant with the legislative history of the statute as contained in the record, and promotes the legitimate purposes of the legislation.

Appellants next assert that NRS 463.160(8)(a) violates their

---

[8]Gaming Commission Regulation 4.070(8) provides that:
the board may, in its discretion, waive payment of an investigative fee or cost.

constitutional right to privacy. We hold, however, that the legislature had a compelling interest in subjecting persons and businesses engaged in commerce and sharing space with gaming establishments to selective investigation and a finding of suitability. Such an interest is more than sufficient to sustain the statute in the face of a constitutional challenge based upon invasion of privacy assertions. Plante v. Gonzales, 575 F.2d 1119 (5th Cir. 1978). A person or entity voluntarily situated and doing business within such proximity of gaming establishments cannot override legitimate government control mechanisms by invoking a superior right of privacy. To do so would substantially frustrate the state's capacity to regulate the gaming industry. Furthermore, appellants' claim that disclosure of financial information violates their right to privacy is also unfounded since any financial information obtained from appellants in the investigative process is confidential and immune from public disclosure by law. NRS 463.120(4). Any invasion of appellants' privacy is minimal and therefore constitutionally permissible. Whalen v. Roe, 429 U.S. 589 (1977).

We next turn to the argument that NRS 463.160(8)(a) impairs appellants' contract rights without just compensation. This contention immediately fails as to the Stardust shop because the lease under which appellants maintain their business expressly covers the possibility of a suitability determination and termination of the lease in the event of denial. In any event, it is well established that the police power concerns of public health, safety and welfare may be invoked where reasonably necessary to control even contractually vested rights antecedent to regulating legislation without running afoul of the impairment of contracts clause of the state and federal constitutions. Koscot Interplanetary, Inc. v. Draney, 90 Nev. 450, 530 P.2d 108 (1974). It is equally settled that vested rights in a given profession or calling may be made subject to licensing or qualification enactments post dating such rights without running afoul of the impairments clause. Collins v. Texas, 233 U.S. 288 (1912). Here appellants enjoy whatever advantages exist in doing business in juxtaposition with gaming establishments. That spatial relationship will not be impaired if appellants are operating according to the laws of this state. We may not presume that a finding of suitability will be denied appellants if their business is consistent with their representations in this action. We accordingly hold that appellants have suffered no impairment of contracts as a result of the challenged statute.

Appellants' claim that NRS 463.160(8)(a) impairs their right to hold specific employment is also without merit. A finding of unsuitability by the Commission would not prevent appellants from engaging in the retail clothing business. It would only affect appellants' right to maintain their businesses in conjunction with gaming establishments at particular locations. This is not constitutionally prohibited. Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886 (1961). Given the apparent extent of appellants' investments in their long-standing retail businesses, we are not suggesting, however, that appellants' interests are not substantial. Still, the public welfare far transcends any interest on the part of appellants to retain their existing locations. We are not unmindful, however, of the obvious differences between one who seeks and is denied a gaming license and one who, after investing substantial time and money in business locations held under lease, is thereafter found unsuitable to continue with such businesses. We trust the state will be equally mindful of such differences. State of Nevada v. Rosenthal, 93 Nev. 36, 559 P.2d 830 (1977). In any event, under the worst scenario, appellants would not be foreclosed from continued retail operations at non-gaming locations, and their existing shops presumably could be sold.

Lastly, appellants complain of a discriminatory application of NRS 463.160(8)(a) in violation of the equal protection clauses of our state and federal constitutions. Appellants argue that they have been singled out of a large class and, unlike the remainder of the class, subjected to a determination of suitability. This argument is unsound. All members of the class to which the statute is directed are subject to the requirement of a suitability determination. It is of no constitutional moment that appellants have been ordered to apply for a determination of suitability whereas others within the class have not. We have previously upheld the discretionary power of the Commission. State v. Rosenthal, *supra*. Gaming control would be intolerably burdened if selective investigation were disallowed. The statutory scheme provides a basis for requiring suitability determinations when, for whatever reason, gaming authorities have concern over the activities of those who share space with gaming establishments. The power to confirm or allay such concerns through selective investigation and qualification represents an important aspect of control which the legislature has deemed to be vital to the maintenance of our gaming economy.

428

We hold that the class created by NRS 463.160(8)(a) is reasonable and necessary to the fulfillment of a legitimate legislative purpose and that the statute does not discriminate against appellants.

Appellants have attempted to raise issues in their reply brief which were not asserted in the district court or in their opening brief. These we decline to consider. Phillips v. Mercer, 94 Nev. 279, 579 P.2d 174 (1978); Feldman v. State of Nevada, 96 Nev. 614, 615 P.2d 238 (1980).

Other issues raised on appeal but not discussed in this opinion have been determined to be without merit.

For the reasons above stated, we affirm as qualified, the decision of the district court in holding that NRS 463.160(8)(a) is constitutional (Case No. 13217), but we reverse as to the district court's jurisdiction to enjoin its enforcement (Case No. 12946).

GUNDERSON, C. J., and MANOUKIAN, SPRINGER, and MOWBRAY, JJ., concur.