661 P.2d 467 (1983)
Anthony John SPILOTRO, Appellant,
v.
The STATE of Nevada, ex rel. NEVADA GAMING COMMISSION; Harry M. Reid, as Chairman of the Nevada Gaming Commission; and Clair Haycock, George C. Swarts, Walter Cox, and Jack C. Walsh, as members of the Nevada Gaming Commission, Respondents.
No. 12615.
Supreme Court of Nevada.
March 31, 1983.
*468 Goodman, Terry, Stein & Quintana, and Martin J. Kravitz, Las Vegas, for appellant.
Brian McKay, Atty. Gen., Patricia Becker, Deputy Atty. Gen., Carson City, H. Leon Simon, Deputy Dist. Atty., Las Vegas, for respondents.

OPINION
MOWBRAY, Justice:
Appellant is challenging the constitutionality of NRS 463.151 through NRS 463.155 and Nevada Gaming Commission Regulation 28 on numerous grounds. He also challenges the adequacy of his hearing before the Commission, and the failure of the Commission to make factual findings in support of its decision barring him from licensed gaming establishments in Nevada. We hold that the statutes and the Commission regulation in issue are constitutional. However, we reverse and direct the district court to remand the case to the Commission for a statement of the basic factual findings on which the Commission rested its ultimate finding that appellant fell within the meaning of NRS 463.151(1) and Regulation 28.010.

THE FACTS
On December 7, 1978, the Nevada Gaming Commission issued an order placing appellant Anthony J. Spilotro on its list of persons to be excluded or ejected from licensed gaming establishments throughout the State of Nevada. The exclusionary list was established pursuant to NRS 463.151 through NRS 463.155 and Gaming Commission Regulation 28.[1] The Commission's order *469 followed a hearing at which Spilotro had been represented by counsel. He had been given the opportunity to present evidence and to cross-examine witnesses. In its decision, the Commission stated the statutory grounds for entering an order of exclusion. The Commission did not make any further findings of fact in support of its decision.
Spilotro is subject to a gross misdemeanor charge if he enters the premises of a licensed gaming establishment while he is on the list.[2] He does not allege that he has been charged with such a violation.
Spilotro petitioned for judicial review of the Commission's order. The district court affirmed the order, upholding the constitutionality of the statutes authorizing the exclusionary list and holding that the order was supported by substantial evidence in the record. This appeal followed.

THE COMMISSION FAILED TO MAKE THE NECESSARY FACTUAL FINDINGS
NRS 463.312(18) provides that:
[a]fter the hearing of a contested matter, the Commission shall render a written decision on the merits which must contain findings of fact, a determination of the issues presented and the penalty to be imposed, if any; and shall thereafter make and enter its written order in conformity to such decision. (Emphasis added.)
Nevada Gaming Commission Regulation 28.070(1) makes NRS 463.312(18) applicable to hearings under NRS 463.153. Factual findings are required to assure reasoned decision making by the administrative agency, assist the affected parties in preparing for judicial review, and enable the courts to review the agency's action without intruding on the agency's fact-finding function. See State, Dep't of Commerce v. Hyt, 96 Nev. 494, 611 P.2d 1096 (1980); Pub. Serv. Comm'n v. Continental Telephone Co., 94 Nev. 345, 580 P.2d 467 (1978); Nevada Tax Comm'n v. Hicks, 73 Nev. 115, 122, 310 P.2d 852, 855 (1957); In re Sturm, 11 Cal.3d 258, 113 Cal. Rptr. 361, 521 P.2d 97 (Cal. 1974); Application of Hawaii Elec. Light Co., Inc., 60 Hawaii 625, 594 P.2d 612 (Hawaii 1979).
In the instant case, the Commission did not make any findings of basic fact to support its ultimate findings that Spilotro possessed a notorious and unsavory reputation, had been convicted of crimes that would be felonies if committed in Nevada or under federal law, and was a person whose presence in a licensed gaming establishment would be inimical to the interests of the State and the licensed gaming industry. Thus, the Commission made absolutely no attempt to comply with the dictates of NRS 463.312(18). We therefore reverse, and order the district court to remand this case to the Gaming Commission for a statement of the factual basis for its order. NRS 463.315(11)(c).
Appellant's other contentions would be certain to reappear following reissuance of the Commission's written order. We therefore shall dispose of them at the present time.

THE STATUTES AUTHORIZING THE EXCLUSIONARY LIST ARE VALID ON THEIR FACE
Appellant first contends that NRS 463.151 through NRS 463.155 are unconstitutional *470 on their face because they permit punishment of individuals on the basis of status or reputation. He relies on City of Reno v. District Court, 83 Nev. 201, 427 P.2d 4 (1967), in which we invalidated a disorderly conduct ordinance that did not require the doing of an act or the presence of criminal intent before imposing punishment. The city of Reno had attempted to supply these elements by inference from the past history or reputation of the defendant and his association with others bearing the same burden.
Mere association with a person or group cannot be made criminal. Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); Sawyer v. Sandstrom, 615 F.2d 311 (5th Cir.1980). The State may inflict punishment only if the accused has committed some act or engaged in some behavior that society has an interest in preventing; thus, the State may not punish solely on the basis of status or reputation. Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968) (plurality opinion); Robinson v. California, 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962). However, appellant's reliance on City of Reno v. District Court is misplaced, for two reasons. First, the purpose of the statutes is regulatory, not penal. The exclusionary list is designed not to punish those listed for past bad behavior, but to protect the interests of the State and the licensed gaming industry, by avoiding any potentially significant criminal or corruptive taint and thus maintaining public confidence and trust in the gaming industry. See Nevada Tax Comm'n v. Hicks, supra, 73 Nev. at 119, 310 P.2d at 854; NRS 463.130(1)(c); NRS 463.151(1) & (3)(c). See also State, Nev. Gaming Comm'n v. Glusman, 98 Nev. 412, 651 P.2d 639 (1982).
Additionally, the statutes require the commission of an act before imposing any criminal sanctions. A person must first be listed by the Gaming Commission, and then the listed person must enter the premises of a licensed gaming establishment to commit the gross misdemeanor set forth in NRS 463.155. As will be discussed below, the State may validly prohibit a listed person from entering such establishments. The situation is akin to that found in Powell v. Texas, supra, where the High Court upheld the conviction of a chronic alcoholic who violated a statute prohibiting persons from being "found in a state of intoxication in any public place." 392 U.S. at 517, 532, 88 S.Ct. at 2146, 2154. The dangers of harassment and unfettered police discretion pointed out in City of Reno are not here present. See Dinitz v. Christensen, 94 Nev. 230, 577 P.2d 873 (1978). In sum, the statutes authorizing the exclusionary list do not permit criminal punishment on the basis of status or reputation.
Appellant also challenges the statutes on their face as constituting a bill of attainder. This contention is meritless. A bill of attainder is any legislative act that applies to named individuals or an easily ascertainable group in such a way as to inflict punishment on them without a judicial trial. United States v. Brown, 381 U.S. 437, 448-49, 85 S.Ct. 1707, 1714-15, 14 L.Ed.2d 484 (1965), citing United States v. Lovett, 328 U.S. 303, 315-16, 66 S.Ct. 1073, 1078-79, 90 L.Ed. 1252 (1946); Oueilhe v. Lovell, 93 Nev. 111, 560 P.2d 1348 (1977). On the other hand, if the enactment sets out criteria or a general definition describing those who fall within its prohibitions, it is not a bill of attainder. In the instant case, NRS 463.155 sets forth the elements of the gross misdemeanor, but leaves the determination of a particular defendant's guilt to the courts. Hence, it is not a bill of attainder. See Oueilhe v. Lovell, supra. The other statutory provisions lack any punitive purpose, and therefore cannot be bills of attainder. For the same reason, contrary to appellant's contention, they do not inflict a "cruel and unusual punishment," upon appellant or anyone else. See Trop v. Dulles, 356 U.S. 86, 94-97, 78 S.Ct. 590, 594-96, 2 L.Ed.2d 630 (1958).
Appellant lastly challenges the statutes on their face as overbroad. He contends that because the statutes (as written at the time of his hearing) permitted the Commission to exclude persons from any establishment that is licensed to operate any gambling game, including slot machines, the statutes impermissibly swept constitutionally protected conduct within their ambit, and must be declared invalid on their face. However, the Legislature amended the statutes in 1981 to exclude licensed gaming establishments that contained slot machines only. Since Spilotro does not allege that he has been charged with a violation of the statutes, we shall analyze the statutes as they presently exist. See Western Beverage, Inc. v. State, 96 Idaho 588, 532 P.2d 930, 932 (Idaho 1974).
The overbreadth doctrine traditionally has been reserved for statutes regulating First Amendment rights. See State, Nev. Gaming Comm'n v. Glusman, supra. It is based on the assumption that a statute regulating First Amendment freedoms may cause persons not before the court to refrain from constitutionally protected conduct; hence, the defendant may challenge the statute even if it would continue to prohibit his own conduct after it was sufficiently narrowed. Broadrick v. Oklahoma, 413 U.S. 601, 610-12, 93 S.Ct. 2908, 2914-16, 37 L.Ed.2d 830 (1973). However, as the High Court noted in Broadrick, the function of the overbreadth doctrine attenuates as the behavior forbidden by the State moves from "pure speech" toward conduct falling within the scope of otherwise valid criminal laws that reflect legitimate state interests. "[P]articularly where conduct and not merely speech is involved ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." 413 U.S. at 615, 93 S.Ct. at 2917.
The statutes involved in the instant case are not in any way directed toward the regulation of speech or association, and do not infringe on any First Amendment rights. The First Amendment protects the freedom to associate for the promotion of political and social ideas, not association purely for social or economic purposes. State, Nev. Gaming Comm'n v. Glusman, supra. See Lewitus v. Colwell, 479 F. Supp. 439, 444-45 (D.Md. 1979). See also Healy v. James, 408 U.S. 169, 181, 92 S.Ct. 2338, 2346, 33 L.Ed.2d 266 (1972); Bates v. Little Rock, 361 U.S. 516, 523, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). Cf. Woloson v. Sheriff, 93 Nev. 283, 564 P.2d 603 (1977) (First Amendment interests not involved where transaction does not involve communication of an idea from one person to another, affect the political process, provide information on matters of public importance, or otherwise contribute to the exchange of ideas).
Even if some First Amendment right were incidentally affected, the statutes as amended would not be overbroad, as they are narrowly drawn to fit their intended purpose. Listed persons are excluded only from gaming establishments operating more than slot machines, i.e., casinos, and exclusion is an appropriate means of protecting the State's paramount interest in maintaining public confidence and trust in the gaming industry.

THE STATUTES AUTHORIZING THE EXCLUSIONARY LIST ARE VALID AS APPLIED TO APPELLANT
Appellant contends that his placement on the exclusionary list deprived him of several constitutional rights. First, he argues that he has been denied his rights of association, travel, and access to public places. These contentions are meritless. The lack of infringement on appellant's First Amendment rights has already been discussed. He does not allege that the State has sought to burden his membership in any particular group. Similarly, appellant has not been denied his constitutional right to travel. See Griffin v. Breckenridge, 403 U.S. 88, 105, 91 S.Ct. 1790, 1800, 29 L.Ed.2d 338 (1971). The amended statutes exempt from their scope gaming establishments containing slot machines only, thereby allowing appellant access to airline and bus terminals and other facilities of interstate commerce.
Appellant does not have a constitutional right of access to businesses, such as casinos, that are generally open to the public. Rodic v. Thistledown Racing Club, Inc., 615 *472 F.2d 736 (6th Cir.), cert. denied, 449 U.S. 996, 101 S.Ct. 535, 66 L.Ed.2d 294 (1980); Flores v. Los Angeles Turf Club, Inc., 55 Cal.2d 736, 13 Cal. Rptr. 201, 361 P.2d 921, 924 (Cal. 1961). He does not allege that the State listed him because of his race, religion, national origin, or any other constitutionally suspect reason. Cf. Gilmore v. City of Montgomery, 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974) (Equal Protection Clause bars city from limiting access to public recreational facilities to racially segregated private schools and groups affiliated with such schools); Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) (even though the government may deny a valuable government benefit to a person for numerous reasons, it may not do so because of that person's constitutionally protected speech or associations). Therefore, appellant has not been denied any right of "access to public places."
For the above reasons, appellant's contention that he has been denied equal protection of the laws is also meritless. The classifications created by the statutes are not suspect, do not infringe on any fundamental rights, and are rationally related to a legitimate State purpose. Appellant has not been "singled out" on any improper basis for listing. See State, Nev. Gaming Comm'n v. Glusman, supra; Cairns v. Sheriff, 89 Nev. 113, 115-16, 508 P.2d 1015, 1017 (1973).
Lastly, appellant argues that the statutes and the administrative hearing that he received violate due process principles. As already discussed, the statutes are a reasonable method of achieving the legitimate end of protecting the State's vital gaming industry, and thus comply with substantive due process. Appellant is entitled to certain procedural due process rights, i.e., notice and an opportunity to be heard, because the State's action places his reputation at stake. Wisconsin v. Constantineau, 400 U.S. 433, 436-37, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). However, appellant received notice and a hearing in this case, as prescribed by NRS 463.153. He cites no authority that would require the State to grant a hearing prior to the Gaming Control Board's provisional order placing him on the list.
At appellant's hearing, considerable hearsay evidence was placed before the Commission. As the Commission did not make any findings of fact, we shall not address appellant's objections that the Commission relied exclusively on hearsay evidence and listed him solely on the basis of his reputation. However, we will note that NRS 463.312(13)(f) provides that "[a]ny relevant evidence may be admitted and is sufficient to support a finding if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs," whether or not the evidence is hearsay.[3]State of Nevada v. Rosenthal, 93 Nev. 36, 44, 559 P.2d 830, 835 (1977). See Richardson v. Perales, 402 U.S. 389, 402-07, 91 S.Ct. 1420, 1427-30, 28 L.Ed.2d 842 (1971). Moreover, the Commission had before it evidence that appellant had been convicted of a felony in federal court, in addition to several government-sponsored reports that identified appellant as affiliated with organized crime.
In sum, we uphold NRS 463.151 through NRS 463.155 and Gaming Commission Regulation 28 as constitutional on their face and as applied to appellant. However, we reverse and direct the district court to remand the case to the Gaming Commission for a statement of the facts on which it relied in placing appellant on the exclusionary list.
MANOUKIAN, C.J., and SPRINGER, J., concur.
*473 GUNDERSON, Justice, and SCHOUWEILER, District Judge,[1] concurring:
In general, we agree with our brethren. However, we feel one point should be amplified, i.e., that the court's decision today does not validate all of counsel's various contentions concerning the sweep of NRS 463.151 through NRS 463.155.
For example, respondent's counsel has asserted, in effect, that NRS 463.151 through NRS 463.155 should be construed so as to preclude an "excluded person" from entering upon any property owned by a gaming licensee, under any circumstances. In counsel's view, the statute applies even though the portion of the premises visited is not devoted to gaming, and even when it is entered in the exercise of fundamental constitutional rights.
Thus, if we understand counsel's contentions, an "excluded person" could not even enter the Union Plaza Hotel in Las Vegas en route to the railway station, which is situated within that hotel. This is so, respondent's counsel seems to contend, even though the direct route through the hotel to the station is far from the casino, and the station itself is about a city block distant from any gaming activities. From comments at oral argument, we gather respondent's counsel also may think that an "excluded person" could neither lawfully attend political events on the non-gaming portion of a gaming licensee's premises, nor visit any of the professional practitioners such as physicians who commonly occupy office space in hotel-casino complexes, nor pursue any other legitimate pursuits on the non-gaming portion of a gaming licensee's premises. Indeed, as respondent's counsel would construe NRS 463.151 through NRS 463.155, an "excluded person" traveling by bus through Nevada could not even visit the lavatories in several of our established bus stations, or eat at the lunch counters during rest stops, because those facilities are in buildings also occupied by casinos. On the other hand, appellant's counsel urges that such draconian applications of NRS 463.151 through NRS 463.155 would unduly impinge on constitutional rights and freedoms.
Of course, the cases imagined by the parties' counsel are not now, and may never be, before this court. Upon remand to the Gaming Commission, findings of fact may or may not be made that will support an order placing appellant on the list of "excluded persons." Thereafter, appellant and law enforcement officers might or might not act in ways which would raise, in concrete factual settings, constitutional issues that are now purely hypothetical. It is not the function of this court to provide abstract answers to moot or hypothetical questions. See, e.g., Williams v. State, 97 Nev. 1, 5 n. 4, 620 P.2d 1263 (1981); Spears v. Spears, 95 Nev. 416, 418, 596 P.2d 210 (1979); Union Pacific R.R. Co. v. Adams, 77 Nev. 282, 290, 362 P.2d 450 (1961). Moreover, all statutes should be construed so as to render them constitutional, whenever possible, Anaya v. State, 96 Nev. 119, 123, 606 P.2d 156 (1980), and criminal statutes must be strictly construed. Sheriff v. Hanks, 91 Nev. 57, 60, 530 P.2d 1191 (1975).
NOTES
[1] NRS 463.151 (as amended in 1981) provides as follows:

1. The legislature hereby declares that the exclusion or ejection of certain persons from licensed gaming establishments which conduct pari-mutuel wagering or operate any horse race book, sports pool or games, other than slot machines only, is necessary to effectuate the policies of this chapter and to maintain effectively the strict regulation of licensed gaming.
2. The commission may by regulation provide for the establishment of a list of persons who are to be excluded or ejected from any licensed gaming establishment which conducts pari-mutuel wagering or operates any horse race book, sports pool or games, other than slot machines only. The list may include any person whose presence in the establishment is determined by the board and the commission to pose a threat to the interests of this state or to licensed gaming, or both.
3. In making that determination, the board and the commission may consider any:
(a) Prior conviction of a crime which is a felony in this state or under the laws of the United States, a crime involving moral turpitude or a violation of the gaming laws of any state;
(b) Violation or conspiracy to violate the provisions of this chapter relating to:
(1) The failure to disclose an interest in a gaming establishment for which the person must obtain a license; or
(2) Willful evasion of fees or taxes;
(c) Notorious or unsavory reputation which would adversely affect public confidence and trust that the gaming industry is free from criminal or corruptive elements; or
(d) Written order of a governmental agency which authorizes the exclusion or ejection of the person from an establishment at which gaming or pari-mutuel wagering is conducted.
4. Race, color, creed, national origin or ancestry, or sex must not be grounds for placing the name of a person upon the list.
As appellant does not allege that he has been charged with a violation of the regulations promulgated under this section, we shall evaluate the statute as amended.
[2] NRS 463.155 provides as follows:

Any person who has been placed on the list of persons to be excluded or ejected from any licensed gaming establishment pursuant to NRS 463.151 is guilty of a gross misdemeanor if he thereafter enters the premises of a licensed gaming establishment which conducts pari-mutuel wagering or operates any horse race book, sports pool or games, other than slot machines only, without first having obtained a determination by the commission that he should not have been placed on the list of persons to be excluded or ejected.
[3] Gaming Commission Regulation 28.010(3) describes the sorts of evidence that may establish a notorious or unsavory reputation, including "identification of a person's criminal activities in published reports of various federal and state legislative bodies which have inquired into various aspects of criminal activities... ." The regulation mentions the McClellan Committee (Senate Subcommittee on Investigation), the Chicago Crime Commission, the New York Waterfront Commission, and the California Crime Commission as possible sources of such reports.
[1] The Governor designated the Honorable Robert L. Schouweiler, Judge of the Second Judicial District Court, to sit in the place of Senior Justice David Zenoff, who was unavailable to sit. (Justice Zenoff had been sitting with the court pursuant to general order of assignment by the Chief Justice, in place of Justice Cameron Batjer, who had retired.) Nev. Const. art. 6, § 4.