598

THE STATE OF NEVADA, THE NEVADA DEPARTMENT OF TAXATION, NEVADA TAX COMMISSION, AND CLARK COUNTY, NEVADA, APPELLANTS AND CROSS-RESPONDENTS, v. CITY OF BURBANK, A MUNICIPAL CORPORATION; CITY OF GLENDALE, A MUNICIPAL CORPORATION; CITY OF PASADENA, A MUNICIPAL CORPORATION; CITY OF LOS ANGELES, A MUNICIPAL CORPORATION; THE DEPARTMENT OF WATER AND POWER OF THE CITY OF LOS ANGELES, AND THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA, RESPONDENTS AND CROSS-APPELLANTS.

No. 14830

December 6, 1984 691 P.2d 845

*Brian McKay,* Attorney General, *Marta Adams,* Deputy Attorney General, Carson City; *Robert J. Miller,* District Attorney, *Stanley W. Parry,* Special Deputy District Attorney, Clark County, for Appellants and Cross-Respondents.

*David W. Hagen,* Reno, for Respondents and Cross-Appellants.

## OPINION

*Per Curiam:*

This is an appeal and cross-appeal from a judgment declaring that certain state tax statutes, as applied, violate the Commerce Clause and a federal statute and ordering reimbursement of taxes which were paid under protest. For the reasons set forth hereinafter, the judgment is affirmed as modified by this opinion.

Hoover Dam provides electrical power for Nevada, Arizona and California. The dam, the power plant, the transmission lines to the switchyards and the switchyards themselves are owned by the United States. Some of the generators are located in Arizona and some in Nevada. Federal property in Nevada is exempt from taxation by the state. NRS 361.050. In 1941 when the dam was completed, the United States entered into contracts to provide power directly to allottees, including the State of Nevada (through the Colorado River Commission, a state agency) and each of the California respondents (Cities).

The State of Nevada has not been a consumer of the electricity it has purchased. Instead, it has subcontracted its entitlement to Nevada Power Company, Kerr-McGee Chemical Corporation, Titanium Metals Corporation of America, Stauffer Chemical Company, Lincoln County Power District, Overton Power District, Basic Management, Inc. and Gemstar (Subcontractors). Subcontractors' power is generated on both the Nevada and Arizona sides of the dam and delivered over federally owned transmission lines principally to transformers in Henderson, Nevada. Boulder City, Nevada also receives its power from Hoover Dam, pursuant to a 1958 Congressional statute transferring the entitlement from the United States. The power for Boulder City is produced by generators located in Nevada.

Respondent Cities receive their power at the federally owned switchyards and transmit it to California over towers and lines owned by Cities, which property and its associated real estate in Nevada apparently have been taxed for a substantial period of time.

In 1965, the Nevada Legislature enacted NRS 361.157 and 361.159, which provided that real estate and personal property otherwise exempt from taxation may be taxed if it is used by a business conducted for profit. Clark County thereafter sought to tax several of the respondents here. This Court affirmed a lower court's judgment that the tax was illegal and that monies paid must be returned, because the respondents were not engaged in a business conducted for profit. Clark County v. City of Los Angeles, 91 Nev. 309, 535 P.2d 158 (1975).

In 1977 the Nevada Legislature amended the two statutes by adding what is currently paragraph 2 of both NRS 361.157 and 361.159. NRS 361.157(2) reads as follows:

When any real estate which is exempt from taxation by reason of its public ownership is used for the generation of electric power, *the value of any right to receive electric power directly from the exempt real estate* by a natural person, association, partnership or corporation or by a political subdivision of any other state *is taxable* as though the holder of that right were the owner of the real estate in the same proportion which his right bears to the total of all rights to receive electric power generated through the use of that real estate.

NRS 361.159(2) is identical, except that it applies to "personal property" instead of "real estate."

Pursuant to the amended statutes, Clark County taxed Cities from 1977 through 1982 a total of $694,012.74, which Cities paid under protest. All out-of-state purchasers of electricity generated from the Nevada side of Hoover Dam were taxed. No in-state purchaser was taxed, including Subcontractors and political subdivisions. Cities eventually filed suit to avoid payment of the tax and obtain reimbursement of the taxes paid under protest.

Josephine Cowperthwaite, a supervisor for the Nevada Department of Taxation, testified at trial that she eliminated from assessment the State of Nevada's Colorado River Commission (CRC) and the Subcontractors, because the state is normally exempt and the Subcontractors' power, she believed, was generated on the Arizona side of the dam. Cowperthwaite also testified that she did not learn until the trial that some of the Subcontractors' power which went through the station in Henderson was generated on the Nevada side of the dam.

During trial, the district court judge visited the dam and its facilities. While on the tour, the judge apparently questioned a representative of Clark County. At the conclusion of the trial, the district court determined: that Cities, as well as certain private corporations, come within the scope of the statutes; that the statutes do not facially violate 15 U.S.C.A. § 391 prohibiting taxes discriminatory to out-of-state consumers of electricity, but do so as applied; that the statutes do not facially violate the Commerce Clause of the U.S. Constitution, but do so as applied; that the statutes do not violate Art. 4, §§ 20, 21 of the Nevada Constitution, which prohibit local or special laws for the assessment and collection of taxes; that Cities are entitled to reimbursement of all taxes paid under protest, plus interest; and that no

further payments can be required of Cities until the statutes are uniformly applied. Both appellants and Cities appeal portions of the judgment entered below.

The threshold issue before this Court is whether paragraph two of the amended statutes is unconstitutional on its face. Our analysis commences with a presumption of constitutionality which must prevail absent a clear contravention of constitutional principles. State of Nevada v. Glusman, 98 Nev. 412, 420, 651 P.2d 639, 644 (1982).

We do not question the legislative prerogative to establish the tax specified in paragraph two. Nor do we perceive error in the lower court's conclusion that Subcontractors fall within the purview of the statute. The CRC serves as a conduit through which the right to receive electrical power came to Subcontractors. It is clear, however, that Subcontractors still receive electric power "directly from the exempt real estate." The fact that the right derives from the contracting authority of CRC is of no significance under the language of the statute. The *source* of the right has no role as a tax determinant in the statutory scheme; rather, it is the *value* of *any* right to receive electrical power directly from the exempt real estate that establishes the criterion for the tax.

Unfortunately, the remaining aspect of the statute requiring our scrutiny leaves no room for constitutional validation. The plain language of the paragraph restricts its impact, in relevant part, to the political subdivisions "of any *other* state." The clear and inescapable import of the term "other" is that the political subdivisions of the State of Nevada are exempt from the tax imposed by the statutes. Such an exemption comports with Nevada law providing for such exemptions, NRS 361.060, and the factual history of the nonpayment of the tax by Boulder City, a municipality within our state.

It is unnecessary to decide the issue of the statutes' compatibility with the Commerce Clause of the federal constitution. Although grave doubt may exist as to whether the statutes could survive such an analysis, there is no latitude for equivocation when scrutinizing the statutes under the proscriptive standards of 15 U.S.C.A. § 391. The latter statute reads as follows:

> No State, or political subdivision thereof may impose or assess a tax on or with respect to the generation or transmission of electricity which discriminates against out-of-State manufacturers, producers, wholesalers, retailers, or consumers of that electricity. For purposes of this section a tax is

discriminatory if it results, either directly or indirectly in a greater tax burden on electricity which is generated and transmitted in interstate commerce than on electricity which is generated and transmitted in intrastate commerce.

The specific subject matter of the quoted federal statute is the discriminatory taxation of the generation or transmission of electricity. Although paragraph two of our amended statutes purports to tax only the value of the right to receive electricity, the difference is one without a distinction. Nevada's tax directly impacts on the transmission of electricity to Cities, who in turn, must increase the cost of electrical power to their resident-consumers. Under § 391 such an impact would be permissible *providing* the resident-consumers of Nevada were subject to the same burden. They are not.

We reject the notion that Nevada's citizens are taxed in different forms thereby compensating for the added tax burden imposed by paragraph two on Cities. This contention is unsound simply because § 391 eliminates its availability. Regardless of a given state's choice of taxing alternatives, the United States Congress has clearly foreclosed the right of states to directly or indirectly yoke the generation and transmission of electricity with an unequal burden. *See* Arizona Public Service Company v. Snead, 441 U.S. 141 (1979). Obviously, when all out-of-state receivers of power are taxed and no in-state receivers are taxed, the statutes have resulted "either directly or indirectly, in a greater tax burden" on interstate commerce than intrastate commerce. *Id.*

Again, it must be emphasized that the inclusion of Subcontractors within the purview of the statutes will not save them since Boulder City and other Nevada political subdivisions remain exempt from the tax. We therefore hold that the statutes facially violate 15 U.S.C.A. § 391 and, as a result, the Supremacy Clause of the U.S. Constitution.

In view of our determination that paragraph two of the amended statutes is unconstitutional on its face, we are left with no alternative other than to affirm the district court's conclusion that Cities are entitled to the reimbursement of tax monies previously paid under protest. They are likewise entitled to interest on the sums so paid in accordance with NRS 361.420(7) (formerly (6)).

We have considered the other contentions raised by appellants and cross-appellants and have concluded that they are without merit or need not be decided as a result of our holding.

Accordingly, the judgment of the district court is affirmed as modified by this opinion.