In the Matter of the LAWFUL GAMBLING LICENSE OF THIEF RIVER FALLS AMATEUR HOCKEY ASSOCIATION, LICENSE NO. 02008.

No. C2–93–1943.

Court of Appeals of Minnesota.

April 26, 1994.

Kurt J. Marben, Charlson, Marben & Jorgenson, P.A., Thief River Falls, for relator Thief River Falls Amateur Hockey Ass'n.

Hubert H. Humphrey, III, Atty. Gen., John S. Garry, Asst. Atty. Gen., St. Paul, for respondent Minnesota Gambling Control Bd.

Considered and decided by RANDALL, P.J., and LANSING and MULALLY, JJ.

1. A sports board is used to award cash or prizes

## OPINION

EDWARD D. MULALLY, Judge.

The Thief River Falls Amateur Hockey Association (the Association) challenges the State of Minnesota Lawful Gambling Control Board's (the Board) order, arguing that Minn.R. 7861.0050 violates substantive due process.

## FACTS

The Association operates a youth hockey program in Thief River Falls, serving 230 children between 4 and 14 years of age. Expenses for the program run approximately $87,000 per year.

The Association is licensed to conduct lawful gambling. Seventy five to eighty percent of the Association's funding comes from gambling conducted at three sites. One site is the Rusty Nail Bar. In accordance with Minn.R. 7860.0090 (1991) and Minn.R. 7861.-0040 (Supp. II 1992), the Association leased space and had a premises permit for this location in order to sell pull-tabs and operate a paddlewheel game. Revenue from the Rusty Nail Bar fulfills almost sixty percent of the Association's budget.

On January 26, 1993, James Arlt and Jack Schultz, agents for the Gambling Enforcement Division of the Department of Public Safety, conducted an undercover investigation into allegations that illegal sports boards were being used at the Rusty Nail Bar.[1] While sitting at the bar, Arlt saw several sports boards for the upcoming Super Bowl game stacked on the bar's service island. Arlt bought a square on the five dollar board, and Arlt and Schultz each purchased a square on the one dollar board from one of the bartenders.

On January 29, 1993, Arlt obtained a warrant to search the Rusty Nail Bar. No sports boards were found during the search.

The Board issued a notice and order for hearing against the Association. At the hearing, the parties stipulated that the Association did not participate in the illegal gambling and was not aware of any unlawful gambling. The ALJ concluded that illegal

based on a score of a sporting event.

gambling was conducted at the Rusty Nail Bar on January 26, 1993 and that the Board was required to suspend the Association's premises permit for the Rusty Nail location for one year. The ALJ also concluded that neither he nor the Board had subject matter jurisdiction to rule on the Association's allegation that Minn.R. 7861.0050 was unconstitutional.

The Board adopted the ALJ's findings of fact and conclusions, with minor clerical corrections. The Board suspended the Association's premises permit for one year. The Association did not lose its gambling license, nor were its other permits suspended. By writ of certiorari, the Association challenges the Board's decision.

## ISSUE

Is suspending an organization's premises permit for one year when illegal gambling has been conducted on the premises rationally related to ensuring the integrity of, and public confidence in, lawful gambling?

## ANALYSIS

■■■ The Association brings a substantive due process challenge to Minn.R. 7861.0050 (Supp. II 1992). It does not allege that a fundamental right is at issue; hence, the rational relationship test applies. *K.E. v. Hoffman,* 452 N.W.2d 509, 513 (Minn.App. 1990), *pet. for rev. denied* (Minn. May 7, 1990). An administrative rule violates substantive due process if it is not rationally related to the objective sought to be achieved as enunciated by the legislature. *Mammenga v. State,* 442 N.W.2d 786, 789, 790 (Minn. 1989). "[M]inimal judicial scrutiny is the correct standard of review." *K.E.,* 452

N.W.2d at 513. It is not for the courts to question the political wisdom of a regulation. *See id.*

Minn.R. 7861.0050 provides:

Subpart 1. Prohibition. Illegal gambling may not be conducted at a premises for which a licensed organization has a premises permit to conduct lawful gambling.

Subp. 2. Discipline. The board *shall* suspend an organization's premises permit for one year for any violation of this part. The board shall suspend or revoke an organization's license if the organization or its agents participated in the illegal gambling prohibited by subpart 1.

(Emphasis added.) The legislature stated that gambling would be regulated "to prevent its commercialization, to ensure integrity of operations, and to provide for the use of net profits only for lawful purposes." Minn. Stat. § 349.11 (1992). The Board has a duty "to regulate lawful gambling to ensure it is conducted in the public interest," and has the authority "to take all necessary steps to ensure the integrity of and public confidence in lawful gambling." Minn.Stat. § 349.151, subd. 4(a)(1), (15) (1992).

We conclude that the agency rule is rationally related to maintaining the integrity of, and public confidence in, lawful gambling because it ensures that the public can enter an establishment where there is lawful gambling and be confident that no illegal gambling has been conducted on the premises.[2]

■■■ Next, the Association argues that the rule is unfair in its application because it penalized the organization, even though it had no knowledge of the wrongdoing and did

---

**2.** We note that other states have addressed the constitutionality of laws regulating the gaming industry and have concluded that they do not violate substantive due process. *Cf. DeMarco v. Colorado Ltd. Gaming Control Comm'n,* 855 P.2d 23, 25–26 (Colo.App.1993) (statute where person convicted of gambling-related offense was forever barred from obtaining gambling license upheld because rationally related to purpose of ensuring that public perceived games were being conducted honestly); *Greenberg v. Kimmelman,* 99 N.J. 552, 494 A.2d 294, 300, 305–07 (1985) (statute preventing family members of state officers from working in gambling industry upheld

because bore rational relationship to purpose of maintaining public confidence in integrity of casino industry); *Spilotro v. State, ex rel. Nevada Gaming Comm'n,* 99 Nev. 187, 661 P.2d 467, 470, 472 (1983) (statutory scheme providing for list to be made of persons to be excluded or ejected from casinos including those convicted of felonies and others whose unsavory reputation would adversely affect the public's confidence or trust in the gaming industry upheld because protected industry from corruptive taint thus maintaining the public's confidence in gaming industry).

not participate in the illegal activity, without taking into account its impact on the organization's finances.

A rule may be invalid as applied when situations arise of which the rulemaking body was not aware. *Mammenga,* 442 N.W.2d at 789. When the enacted rule is applied to this new situation, the rule sometimes will lack a rational relationship to the legislative objective. *Id.* However, the fact that in a particular case the rule yields a harsh result does not invalidate the rule. *Id.*

■ Because Minn.R. 7865.0050 provides for increased penalties for organizations that actually participate in the illegal activity, it appears that the agency realized that an "innocent" organization could be penalized. Moreover, we note that the states have police power in order to protect the health, safety, and welfare of its citizens. *Abeln v. City of Shakopee,* 224 Minn. 262, 267, 28 N.W.2d 642, 645 (1947). The purpose of the rule is not penal, but was enacted to protect the public. *Cf. In re Lawful Gambling License of Henry Youth Hockey Association, License No. 02795,* 511 N.W.2d 452, 457 (Minn.App.1994) (Board must regulate to insure gambling is conducted in public interest and must not only look at acts of licensee, but also harm to public if acts unpunished); *Spilotro v. State, ex rel. Nevada Gaming Comm'n,* 99 Nev. 187, 661 P.2d 467, 470 (1983) (purpose of "black list" not to punish for past behavior but to protect gaming industry and maintain public trust). Thus, the rule was applied as intended and is not unconstitutional.

## DECISION

Minn.R. 7865.0050 does not contravene substantive due process on its face, nor is it invalid as applied to the Association because it passes the rational basis test and was applied as the agency intended.

**Affirmed.**

RANDALL, Judge (concurring specially).

I concur in the result, but I write specially to point out the inherent inequities in the way controlling law is framed, and to suggest alternatives which would remove those inequities and yet allow the state to properly punish wrongdoers.

The majority correctly sets out the law controlling our affirmance:

Minn.R. 7861.0050 (Supp. II 1992) provides:

Subpart 1. Prohibition. Illegal gambling may not be conducted at a premises for which a licensed organization has a premises permit to conduct lawful gambling.

Subp. 2. Discipline. The board shall suspend an organization's premises permit for one year for any violation of this part. The board shall suspend or revoke an organization's license if the organization or its agents participated in the illegal gambling prohibited by subpart 1.

When you have the fact situation we have here, the liquor establishment location, not the charity, is guilty of an infraction; it makes no sense for the bulk of the punishment to fall on the charity. Through warnings, suspension, and fines on the liquor establishment, including possible civil and criminal action, the state has the power to control and penalize the liquor establishment separately. If the charity is found to have aided and abetted the liquor establishment, then so be it, the punishment can fall equally. That would be proper. But here, all parties stipulate that the charity was an innocent bystander. Thus, subpart 2, "Discipline," is capricious when it *requires* the gambling control board to suspend the charity's permit for a full year. The answer is simple. If the charity aided and abetted the liquor establishment in the infraction, use the law. But if the charity did not, the board should have the authority to suspend the charity's permit for less than a year, or not at all, depending on the facts.

In other words, put common sense flexibility in the "discipline" portion.

All the arguments for and against charitable gambling were hashed and rehashed and argued before the present law setting up charitable gambling as a social good was passed. Thus, for better or for worse, charitable gambling is here.

Since that underpinning is firmly in place, it is rational and fair to give the board discipline discretion when the charity is found innocent, at least as to its part, of any intentional wrongdoing. The state's message is better delivered by penalizing the specific wrongdoer, rather than a scatter gun approach, as here.